## PATTERSON v. THOMPSON.

### (Circuit Court, D. Oregon. March 24, 1898.)

1. CORPORATIONS—LIABILITIES OF DIRECTORS—LIMITATIONS OF ACTIONS—LAWS OR. § 3231.

 2 Hill's Ann. Laws Or. § 3231, providing that, "if the directors of a cor poration declare and pay dividends when the corporation is insolvent, * * * such directors shall be jointly and severally liable for the debts of the corporation then existing, or incurred while they remain in office," is penal, and an action thereon is barred by the statute of limitations of three years.

2. SAME—RUNNING OF STATUTE.

 The statutory right of action against the directors of a corporation for declaring dividends when the corporation is insolvent accrues, at least, when the debt is due; and neither an agreement for an extension between the corporation and the creditor, nor a part payment by the corporation, stops the running of the statute.

This was an action by C. M. Patterson against D. P. Thompson to enforce an alleged personal liability under the Oregon statute, on the ground that defendant, as a director in a savings bank, had joined in declaring and paying a dividend while the corporation was insolvent.

U. S. G. Marquam and J. W. Whalley, for plaintiff.

Dolph, Mallory & Simon and Cox, Cotton, Teal & Minor, for defendant.

GILBERT, Circuit Judge. The plaintiff in this action seeks to hold the defendant liable for a debt of the Portland Savings Bank, under the provisions of section 3231, 2 Hill's Ann. Laws Or., which provides as follows:

"If the directors of a corporation declare and pay dividends when the corporation is insolvent, or which renders it insolvent, or diminishes the amount of its capital stock, such directors shall be jointly and severally liable for the debts of the corporation then existing or incurred while they remain in office; or if such directors shall, by any official act or conduct, fraudulently induce any person to give credit to such corporation, they shall be liable in like manner to such person for any loss he may sustain thereby; but any director who voted against such dividend or such fraudulent act or conduct, if present, or who thereafter, as soon as the same came to his knowledge, filed his objections thereto, shall be exempt from such liability."

The complaint alleges: That the defendant was a director of the bank, and that he acted with the other directors in declaring and paying dividends to stockholders on September 12, 1892, and that he made no protest against dividends declared upon December 12, 1892, and March 13, 1893. That, at the date when said dividends were declared and paid, the bank was insolvent. That on March 22, 1893, the plaintiff deposited with the bank $10,000, for which he received a certificate of deposit, payable, with interest, February 11, 1894. That on September 5, 1893, at a meeting of the board of directors, at which the defendant was present and voted in the affirmative, it was resolved that agreements be obtained from the depositors of the bank for extensions of time for the payment of their deposits, and, in pursuance of said resolution, the defendant signed an agreement, which is as follows:

"Whereas, the Portland Savings Bank of Portland, Oregon, has been compelled to close its doors by reason of the unprecedented withdrawal of deposits during the late financial panic in this community; and whereas, we desire to aid said bank to resume business, which we recommend and ask the court to allow; and whereas, we have confidence in the integrity of its officers and the resources of said bank, and desire to lend our influence to the restoration of public confidence in it and its management: Now, therefore, we, the undersigned, depositors in said bank having funds on deposit therein, either upon open account, savings account, or evidenced by certificates of deposit, in consideration of the premises and of the resumption of business by said bank, do hereby severally agree that we will accept for and instead of and in payment of our said balances and claims against the said Portland Savings Bank the following: Ten per cent. thereof payable February 1, 1894; ten per cent. thereof payable May 1, 1894; ten per cent. thereof payable August 1, 1894; ten per cent. thereof payable November 1, 1894; ten per cent. thereof payable February 1, 1895; ten per cent. thereof payable May 1, 1895; ten per cent. thereof payable August 1, 1895; ten per cent. thereof payable November 1, 1895; ten per cent. thereof payable February 1, 1896; and ten per cent. thereof payable May 1, 1896. Deferred payments to bear interest at the rate of six per cent. per annum until paid."

—That on April 18, 1894, the plaintiff received from the bank the sum of $1,000, which, according to said agreement, was payable on February 1, 1894. That on or about May 1, 1894, the bank resumed business. That no further sum has been paid on said deposit, excepting $485.91, paid September 15, 1897. To this complaint the defendant demurred, upon the grounds—First, that the same does not state facts sufficient to constitute a cause of action; and, second, that the action was not brought within the three years limited by statute for the commencement of actions to recover penalties.

In considering the second ground of demurrer, the first question to be determined is whether the liability created by the statute is a penalty, such that an action to enforce it is barred at the end of three years. The Oregon statute above quoted is similar to that of many of the states upon the same subject. In nearly all of such states it has been held that such a statute is penal in its nature, and that an action to enforce liability thereunder is subject to the statute of limitations which is made applicable to actions for the recovery of penalties. The courts have recognized the remedial feature of the statutes, in that they inure to the benefit of the creditors, for whose protection they are intended; but they have also held that, so far as the directors are concerned, the liability is in the nature of a penalty, and that the statutory provisions must be strictly construed. In this respect, reason is clearly coincident with the weight of authority. The liability imposed upon directors under the statute is absolute. It is not apportioned to the amount of the interest which the directors may have in the corporation, as stockholders or otherwise, thus differing from the statutory liability of stockholders. It is not predicated upon the amount of the benefit which may accrue to the directors from the illegal dividend. It does not depend upon the amount of the dividend which is declared, nor the extent of the injury to the creditor, which is thereby occasioned. It is intended by such statutes, upon grounds of public policy, to require the directors of corporations to exercise diligence, to deal honestly with creditors, and to faithfully perform their duties. The law clearly presumes that the director is bound

to know the condition of his corporation, and to know whether or not dividends are payable; and it makes no excuse nor release of liability on account of his failure to acquire such knowledge. It is immaterial that the statute contains no direct prohibition of the payment of dividends under the circumstances mentioned therein. It is sufficient that a penalty is denounced against the act. That penalty can be regarded in no other light than as a punishment for the injurious act. Halsey v. McLean, 12 Allen, 438; Bank v. Bliss, 35 N. Y. 412; Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554; Irvine v. McKeon, 23 Cal. 472; Merchants' Nat. Bank of Chicago v. Northwestern Mfg. & Car Co., 48 Minn. 349, 51 N. W. 117; Bank v. Price, 33 Md. 487; Moies v. Sprague, 9 R. I. 541; Iron Co. v. Pierce, 4 Biss. 327, Fed. Cas. No. 14,367; Gregory v. Bank, 3 Colo. 333; Breitung v. Lindauer, 37 Mich. 217; Stebbins v. Edmands, 12 Gray, 203; Derrickson v. Smith, 27 N. J. Law, 166; Mitchell v. Hotchkiss, 48 Conn. 9; Hill v. Frazier, 22 Pa. St. 320; Bank v. Johnson (Mont.) 45 Pac. 662; Kritzer v. Woodson, 19 Mo. 327.

Counsel for the plaintiff contend that by the decision in Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, the supreme court has over-ruled its former holding that such a statute is penal. It will be seen, however, on a careful consideration of that case, that the decision was based upon a consideration of the remedial purpose of the statute and the protection intended to the creditor, and that the court went no further than to hold that such a statute is not penal, in the sense that it will not be enforced in a state other than that in which the liability was created. In the later case of Bank v. Remsen, 158 U. S. 337, 15 Sup. Ct. 891, it was again ruled that such a statute is one of a penal character, and in the opinion the court remarked that the purport of the decision in Huntington v. Attrill was that such a statute was not "a penal law in the international sense."

The action being for a penalty, and subject to be barred at the end of three years, the question next arises, at what date did the statute of limitations begin to run? The statutory liability of the directors is joint and several for all the debts of the corporation "then existing or incurred while they remain in office." It is contended on behalf of the defendant that the statute began to run from the date when the illegal dividend was declared, notwithstanding that the debt was not then due. So far as the question appears to have been adjudicated in other states, it is held that no cause of action accrues against the directors until the debt of the corporation is due. Jones v. Barlow, 62 N. Y. 202; Sullivan v. Manufacturing Co., 20 S. C. 79; Woolverton v. Taylor, 132 Ill. 197, 23 N. E. 1007. But it is unnecessary to decide that question in the present case. Assuming that the cause of action against the defendant did not accrue until the debt became due, on February 11, 1894, it still appears that more than three years had intervened when, on October 27, 1897, this action was commenced. It is plain that the action is barred, therefore, unless the statute of limitations was suspended either by the agreement of April 10, 1894, extending the time of payment of the debt, or by the payment of $485.91 on account on September 15, 1897.

Did the agreement between the plaintiff and the corporation,

whereby the time of the payment of plaintiff's deposit was extended, operate to toll the statute of limitations, which had begun to run in favor of the directors? But little light upon this question is afforded by the decisions of other courts. In Jones v. Barlow, 62 N. Y. 202, in an action brought to enforce the statutory liability of directors for failure to file an annual report in January, 1871, as required by law, it appeared that during the year 1871 the plaintiff sold to the corporation goods for which, on December 26, 1871, it was indebted to him in the sum of $6,292.78, for which it gave him its notes due and payable on June 6, 1872. On that date 10 new notes were given, maturing at successive intervals. The action was commenced against the trustees to enforce their statutory liability, on February 7, 1873, before the last three notes were due. It was held that the plaintiff was not entitled to recover on the three notes that had not yet matured. The court said:

"Whatever limitations and conditions attach to the corporate and primary obligation, whether attaching to it at its inception or growing out of subsequent lawful agreements of the parties, necessarily limit and qualify the liability of the trustees."

It is contended by the defendant that the statute of limitations was not necessarily under consideration in that case. It is apparent, however, that the principle on which the statute is to be applied was directly involved. The court decided that the plaintiff was bound by the contract of the corporation extending the time of payment of the debt, and that he had no cause of action until that time expired. In that case, as in the case at bar, the debt had matured, and a cause of action had arisen before the execution of the new notes and the extension of the time of payment. The new notes so taken were not evidence of a new contract or a newly-created liability. They were but the means of postponing the time of payment. But in the case of Blake v. Clausen, 38 N. Y. Supp. 514, decided in 1896, the supreme court of New York denied that Jones v. Barlow was authority for the proposition which is here contended for by the plaintiff, expressing the view that "the statute of limitations was in no manner involved" in that decision, and held that in a case similar to the case at bar the statute began to run from the moment when the debt became due and a cause of action accrued, and that the operation of the statute could not be suspended by renewals or extensions granted without the knowledge or consent of the trustee sought to be charged. There is no direct intimation in the opinion that the ruling would have been otherwise if the trustee had consented to the extension. On appeal to the appellate division of that court, the decision was affirmed upon the ground that the statute of limitations began to run from the moment when the note fell due, and that, when a cause of action accrued and the statute began to run, no subsequent agreement between the corporation and the creditor could suspend its operation. Blake v. Clausen (Sup.) 41 N. Y. Supp. 772. Opposed to the case of Jones v. Barlow, and, as I hold, expressing the correct doctrine, are the cases of Bassett v. Hotel Co., 47 Vt. 314, and Sullivan v. Manufacturing Co., 20 S. C. 79. In Bassett v. Hotel Co., it was held that the statutory right of action against directors accrued when the debt was

contracted, and that the statute then began to run, and that a judgment thereafter recovered against the corporation did not operate to suspend it. In Sullivan v. Manufacturing Co. it was held that the personal liability of directors, resulting from their failure to perform certain duties, arose at the time of such failure; that the statute of limitations then began to run; and that a subsequent renewal of the debt, by giving a new note therefor, did not suspend its operation. In harmony with these cases are certain decisions applying the statute of limitations to actions against directors for their failure to file reports as required by statute. Thus, it is held that, where a corporation fails to make its annual report, its trustees at once become individually liable for its debts, and that the statute of limitations thereupon begins to run in favor of all debts then due, and that subsequent defaults in making annual statements do not renew such causes of action, notwithstanding that the statute attaches the liability both to the debts existing when the default is made and to those contracted thereafter until the report is filed. Losee v. Bullard, 79 N. Y. 404; Rector, etc., v. Vanderbilt, 98 N. Y. 170; Bank v. Johnson (Mont.) 45 Pac. 662.

The statute of Oregon requires that the acknowledgment or the new promise which shall be evidence of a continuing contract sufficient to take the case out of the operation of the statute of limitations shall be in writing, signed by the party to be charged thereby. In the case before the court the defendant has made no agreement with the plaintiff extending the time of payment. He has signed nothing by which he may be bound. He has no contract whatever with the plaintiff. The director of a corporation has no contract with the corporation's creditors. While he participates with the other directors in ordering the action of the corporation, all corporate acts are, nevertheless, performed by the corporation itself. On February 11, 1894, the plaintiff had a matured cause of action against any or all of the directors of the Portland Savings Bank. The statute at once began to run, and nothing could stay it except an agreement between the plaintiff and the defendant. The plaintiff did not choose to enforce his remedy against the directors. He chose, rather, to look to the corporation for the payment of his debt. He voluntarily signed an instrument expressing his confidence in the officers of the corporation. In consideration of that confidence and the benefit to be derived by him from the opening of the bank, and the interest to be paid on his deferred payments, he contracted with the corporation for the extension of the debt. There can be no doubt that the agreement was based upon a valid consideration, and that it was operative and binding both upon the corporation and the plaintiff. As between the parties to it, it stayed the statute of limitations, and deferred the right of the plaintiff to bring an action against the corporation. It cannot be said, however, that it operated to create a new liability. The debt was the same. Its time of payment only was changed. While so consenting to the extension of time so far as his remedy against the corporation was concerned, the plaintiff undoubtedly retained the right to pursue his concurrent remedy under the statute against the directors. He was not barred from doing so by virtue of

his agreement with the corporation. But it is urged that the defendant cannot invoke the protection of the statute of limitations, for the reason that, as director, he voted for and consented to the agreement. It is difficult to find a principle on which to rest the doctrine that the right to enforce the statutory liability shall depend upon whether or not the director, by his vote, has consented to an agreement between the corporation and the creditor extending the time of payment of the debt. The action of the individual directors in their board meetings is a matter with which the creditor has no concern. He is not presumed to know how they have voted, nor is he required to make inquiry concerning the vote. The application of such a rule would result in holding that a director who voted with the minority against the extension might be discharged from liability, while other directors would still be held. The action of the individual directors is not communicated to the creditor, and he does not act upon the same. He has no privity with the directors. He deals with the corporation through its president and secretary. If the defendant consented to the extension in this case, it was not a consent with the plaintiff, and it cannot be construed as a promise to the plaintiff or a renewal of his statutory cause of action.

The foregoing considerations are applicable also to the plaintiff's contention that by the payment of $485.91 on account on September 15, 1897, the cause of action against the defendant was renewed. If the corporation could not, by its express agreement with the plaintiff, renew the cause of action as against the directors, it follows that it could not do so by a part payment. The demurrer to the complaint must be sustained.