In re BROWN.

BROWN v. MAJOR et al.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,601.

BANKRUPTCY (§ 76*)—INVOLUNTARY PROCEEDINGS—PETITIONING CREDITORS.

Const. Cal. art. 12, § 3, provides that "the directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors for all moneys embezzled or misappropriated by the officers of such corporation or joint-stock association during the term of office of such director or trustee. The Supreme Court of the state, whose decision in that regard is binding on the federal courts, has held that such provision is self-executing, and that the liability of a director to creditors thereunder is contractual and may be enforced by any creditor against any director by an action at law. *Held*, that the liability of a director of a savings bank corporation, whose funds have been embezzled or misappropriated by its officers, to depositors in such bank, is a fixed liability absolutely owing within the meaning of Bankr. Act July 1, 1898, c. 541, § 63a (1), 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), and that such depositors are creditors who may join in a petition in involuntary bankruptcy against the director.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 76.*]

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of California, in Bankruptcy.

Hiram W. Johnson, for petitioner.
Daniel O'Connell, for respondents.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This is a petition for the revision, under section 24b of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3432), of an order of the United States District Court for the Northern District of California.

The petition to this court shows that on the 28th day of January, 1908, Frieda R. Major, Maude A. Ralston, and Kate A. O'Connell, as administratrix of the estate of George P. O'Connell, presented a petition to the judge of the court below praying that the present petitioner be adjudged bankrupt. Brown field a demurrer to that petition, which demurrer the court below overruled, and it is that ruling that is here sought to be revised. The real grounds of the demurrer were that the petition for the adjudication in bankruptcy did not show that the petitioners thereto were holders of provable claims against Brown or his estate, that the amount of the alleged claims of the petitioners against the alleged bankrupt was not sufficient to entitle them to the relief sought, and that the averments of the petition filed by the alleged creditors were indefinite and uncertain in certain enumerated particulars.

The petition to which the demurrer was interposed alleged, among other things, that the California Safe Deposit & Trust Company was then, and for more than five years then last past had been, a corporation organized and existing under the laws of the state of California, and until October 30, 1907, conducted a general banking business under the laws of that state, and also carried on the business of a savings and loan corporation, and also of keeping money and other valuable personal property in safe-deposit vaults at agreed rentals, and acted as executor, administrator, guardian, trustee, and receiver, discounted bills of exchange and other evidences of indebtedness, and received moneys on deposit, payable on demand and otherwise; that the whole amount of the capital stock of the company was three millions of dollars, divided into 30,000 shares of the par value of $100 each, of which stock 22,122 shares were subscribed for and issued, 577 of which were issued to and then held by Brown; that on November 1, 1907, Brown was, and for five years prior thereto had been, a director and vice president and manager of the company, and was not, and had not been during the period mentioned, a wage-earner or engaged chiefly in farming or the tilling of the soil; that on October 30, 1907, the company closed its doors and refused to pay on demand the money deposited therein, and refused to pay any of its debts or obligations, and has continued in such refusal, and has kept its doors closed ever since; that on December 7, 1907, the bank commissioners of the state of California adjudged the company insolvent, and that it was dangerous for it to continue to do business, and on December 9th of the same year the Attorney General of the state commenced an action in the name

of the people of the state against the company and its officers and directors, in the superior court of the state in and for the city and county of San Francisco, to have the company adjudged insolvent and a receiver thereof appointed, and that on January 3, 1908, a default was entered against such officers and directors, including Brown, and that on January 14, 1908, the said superior court adjudged the company insolvent and appointed a receiver of its property; that the petitioners are creditors of Brown having provable claims amounting in the aggregate, in excess of securities held by them, to the sum of $500, the nature and amount of which are as follows:

"That said California Safe Deposit and Trust Company was insolvent on said December 7th, 1907, and for more than a year prior thereto said J. Dalzell Brown well knew during all that time, and advertised and requested your petitioners and others to deposit their money with said company, and during the months of September and October, 1907, your petitioner Kate A. O'Connell, as such administratrix, deposited the sum of one thousand seven hundred and seventy-four dollars ($1,774.00) with said company, and in the month of October, 1907, said Frieda R. Major deposited the sum of eleven hundred and twenty-five dollars ($1,125.00) with said company, and about July or August, or September, 1907, said Maude A. Ralston deposited the sum of one hundred dollars ($100.00) with said company, said company receiving and keeping each and all of said deposits as a savings bank under the laws of the state of California, agreeing to return said money to said depositors on demand, and the allowance of said deposits by said Brown at said time was a violation of section 562 of the Penal Code of the state of California."

That petitioners thereafter demanded from said company the payment of the amount of their several deposits of money, which the company refused to pay, and that no part thereof has ever been paid to the petitioners or to any person for them; that the petitioners thereafter demanded from the California Safe Deposit & Trust Company payment of the amount of their said several deposits, no part of which payment has ever been made; that during the three years then last past, and during the term of office of the said Brown, moneys were embezzled and misappropriated by the officers of the company as follows:

"(1) In violation of section 571 of the Civil Code of the state of California, more than the sum of five million dollars of the money of the depositors of said bank and corporation was loaned on inadequate security.

"(2) In violation of section 578 of said Civil Code more than the sum of three million dollars of the deposits and funds of said corporation was directly and indirectly borrowed by the directors and officers of said corporation.

"(3) In violation of said section 578 more than five million dollars of the deposits and funds of said corporation were loaned, for which officers and directors of said corporation became and were obligors, indorsers, and sureties.

"(4) In violation of section 561 of the Penal Code, officers of said corporation overdrew their accounts with said bank and wrongfully obtained the money and funds of said bank to the amount of one million dollars.

"(5) In violation of section 560 of the Penal Code, and section 309 of the Civil Code, dividends to more than one million dollars were made and paid from other than the surplus profits arising from the business thereof.

"(6) In violation of said sections of the Penal Code and Civil Code, the capital stock of said corporation to ——— dollars was divided, withdrawn, and paid to certain stockholders of said corporation.

"(7) In violation of said sections of the Codes, debts to the amount of six million dollars beyond the subscribed capital stock were created.

"(8) During the three years said J. Dalzell Brown and other officers and

directors of said corporation knowingly received and possessed themselves of the moneys, stocks, bonds, and other property of said corporation otherwise than in the payment of a just demand, and, with intent to defraud, omitted to make, or caused or directed to be made, a full and true entry thereof in the books and accounts of said corporation.

"(9) During the past three years said corporation and savings bank has purchased, held, and conveyed, and now holds, stock and shares of various worthless and insolvent corporations amounting to more than four million dollars, which section 574 of the Civil Code and other laws of the state of California prohibits said corporation from purchasing, holding, or conveying.

"(10) The moneys received by said bank and corporation, and its officers and directors, were received as a bank for safe keeping, savings, and loan, according to the restrictions provided by law, and during the past three years said savings bank and corporation purchased, invested, and loaned its capital and the money of its depositors in mining shares or stocks to the mount (amount) of more than one million dollars."

The petition of the creditors further alleges that Brown is insolvent, and that within four months next preceding the filing of the petition, while so insolvent, he committed acts of bankruptcy as follows:

"(1) On or about December 13, 1907, an action was commenced in said superior court against J. Dalzell Brown by A. B. Southard and J. A. Bloch for the sum of $3,693.70, and said Brown, with intent to prefer such creditors, allowed a judgment by default to be entered against him in said action on or about December 23, 1907, and said judgment constitutes a lien on the real estate of said Brown, and is still in full force and effect.

"(2) On or about the ―― day of December, 1907, said Brown, with intent and purpose of hindering, delaying, and defrauding his creditors, and especially your petitioners, made and caused to be made conveyances and transfers of the property hereinafter described, and other property, to his wife, Harriet D. Brown, of said city and county of San Francisco, without any valuable consideration, and with intent to prefer said Harriet D. Brown to all his other creditors, and especially these petitioners, and said Harriet D. Brown joined in said intent and purpose: (1) That parcel of land on the southerly side of Washington street and east of Buchanan street, in said city and county of San Francisco, with the improvements thereon, numbered 2231 Washington street, and a part of block 238 of the Western addition of said city and county of San Francisco, and more particularly described in said conveyances, duly recorded in the office of the county recorder of said city and county of San Francisco on the ―― day of December, 1907. (2) That large tract of land situated on the east side of Clear Lake, in Lake county, state of California, and known as 'Carson Rancho.' (3) Shares of stock in various corporations, and automobiles and other personal property, and particulars of which these petitioners are not at present prepared to state with certainty."

The provision of section 59b of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. 1901, p. 3445]) is that:

"Three or more creditors who have provable claims against any person which amount in the aggregate, in excess of the value of securities held by them, if any, to five hundred dollars or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt."

As it appears from the creditors' petition that Brown is the owner of only $2^1/_5$ per cent. of the capital stock of the California Safe Deposit & Trust Company, the amount of his liability to them as such stockholder is less than the statutory amount of $500, and, therefore, the petition, in so far as it is based upon the alleged bankrupt's liability as a stockholder, is insufficient. It must, therefore, rest upon his liability as an officer and director of the bank. Amounting in the aggre-

gate, as they do, to $2,899, the claims form a sufficient basis for the petition if they are provable against the alleged bankrupt. Provable claims, under the provisions of section 63 of the bankrupt act, include debts of the bankrupt which are—

"(1) a fixed liability as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; * * * (4) founded upon an open account or upon a contract express or implied. * * * "

By section 3 of article 12 of the Constitution of California it is declared:

"The directors or trustees of corporations and joint stock associations shall be jointly and severally liable to the creditors for all moneys embezzled or misappropriated by the officers of such corporation or joint stock association during the term of office of such director or trustee."

And section 309 of the Civil Code of California provides:

"The directors of corporations must not make dividends except from the surplus profits arising from the business thereof; nor must they create any debts beyond their subscribed capital stock; nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock except as hereinafter provided, nor reduce or increase the capital stock except as herein specially provided. For a violation of the provision of this section, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen) are, in their individual or private capacity, jointly and severally liable to the corporation and to the creditors thereof, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or debt contracted; and no statute of limitations is a bar to any suit against such directors for any sums for which they are liable by this section."

Statutes making officers and directors of a corporation responsible to its creditors for losses growing out of the negligent, wrongful, or fraudulent conduct of such officers or directors are regarded by most courts as of a penal nature, and as not arising out of contract. Patterson v. Thompson (C. C.) 86 Fed. 85, and cases there cited; 21 Am. & Eng. Ency. of Law, p. 882. But we have here a decision of the Supreme Court of California construing the above-quoted provision of the Constitution of that state, in which that court distinctly held that the liability imposed by section 3 of article 12 of the Constitution of California is one of suretyship, and therefore of contract, to enforce which liability any creditor may sue such officer or director at law; that the right of the individual creditor does not depend upon others, and that "if the necessary parties are not brought in, and that fact is made to appear, the court should order them to be brought in." Winchester v. Howard, 136 Cal. 432, 444, 446, 447, 64 Pac. 692, 69 Pac. 77, 89 Am. St. Rep. 153. That case was thus stated by the court:

"This appeal is from a judgment entered upon a demurrer to the complaint. The plaintiff, who was himself a depositor in the Savings Bank of San Diego County, as assignee of himself and of many other depositors, brings this action against the directors of the savings bank for the sum of $127,570.29, which is alleged to be the amount of deposits made by such depositors in the bank between the first day of July, 1886, and the twenty-third day of June, 1893, with interest added. The action purports to have been brought on be-

half of himself and any other creditors who may choose to join him. The purpose of the action is to enforce the liability of the defendants for money alleged to have been misappropriated by the defendants while they were directors of such savings bank.

"It is alleged that the savings bank suspended payment on the twenty-third day of June, 1893, and in 1895 was declared insolvent and placed in the hands of its officers, under the banking act, for liquidation.

"Twenty-seven different alleged misappropriations are set out in the complaint. All consisted in taking money out of the bank and applying it to unauthorized purposes, in the interest of said directors, or of some of them. It is charged that at no time when the alleged misappropriations were made did the bank have fifty per cent. of its loans secured by mortgages on real estate, or upon real estate the market value of which exceeded the amount of the loan by sixty per cent. The nominal capital of the savings bank was one hundred thousand dollars, only twenty thousand dollars of which was ever paid in. Most of the misappropriations are alleged to have been made for the benefit of the Consolidated National Bank, a corporation in which Mabury and Howard were stockholders, and of which they were directors. All misappropriations are charged to have been made for the benefit of Howard and Mabury. It is charged that such misappropriations were made by or under the direction of Howard, who acted for Mabury as well as for himself.

"The complaint was demurred to on various grounds, but, by stipulation, only certain grounds of demurrer, out of more than one hundred contained in the demurrer, are in the transcript. The language of the stipulation will throw some light upon the questions submitted on the appeal. It reads as follows:

"'It is hereby stipulated that, whereas the plaintiff herein has appealed from the judgment herein sustaining the demurrer of defendant Hiram Mabury, that on such appeal the appellant shall print only the 3d, 87th, 88th, 93d, 94th, 95th, 96th, and 99th grounds of demurrer; and that if the judgment should be sustained that should end this case; but if it should be reversed, then the demurrer upon the other grounds, not printed, should stand for argument in the court below.

"'This course is taken because it is claimed by the plaintiff that he can avoid the other grounds of demurrer by amendment of the complaint, even if well taken to the complaint as it now stands. Whereas, it is conceded that if the demurrer is sustained on the grounds above stated it would necessarily end this case without further litigation.

"'It is stipulated that the plaintiff must recover on the provisions of the latter part of section 3, article 12, of the Constitution of California, or that he cannot recover at all.

"'It is stipulated that the above grounds of demurrer fully raise the following propositions contended for by defendant, viz.:

"'1st. That said constitutional provision is not effectual without legislation.

"'2d. That misappropriation, as meant by the Constitution, is not shown by the allegations of the complaint.

"'3d. That there is a misjoinder of causes of action. And that this point can be considered, notwithstanding the causes of action are not separately stated.

"'4th. That the Constitution does not purport to give, and hence does not give, any right of action under such provision to an assignee.

"'5th. That in no case is such an action assignable.

"'6th. That the plaintiff was not nor was any of his assignors alleged to be creditors when any of the alleged misappropriations took place.

"'7th. Defect of parties.                    Withington & Carter,
                                             "'C. H. Rippley,
        "'S. F. Leib,                        "'Attorneys for Plaintiff.
        "'Attorney for Defendant Mabury.
"'Filed June 23d, 1899.'

"The constitutional provision referred to reads as follows: 'The directors or trustees of corporations and joint-stock associations shall be jointly and severally liable to the creditors and stockholders for all moneys embezzled

or misappropriated by the officers of such corporation or joint-stock association during the term of office of such director or trustee.'

"The parties seem agreed that the following questions are involved in this appeal:

"(1) Is the constitutional provision self-executing?

"(2) Do the alleged misappropriations come within it?

"(3) Can the action be maintained by an assignee?

"(4) Can the action be maintained by or for a creditor who becomes such after the alleged misappropriation?

"(5) Have all the necessary parties been brought in as plaintiffs or defendants in this case, and is this an action for an accounting?

"(6) Can such an action be maintained by a mere contract creditor? Must the claim against the corporation be first reduced to judgment?

"It is further contended on behalf of the defendants that the constitutional provision is void as being in conflict with the fourteenth amendment to the federal Constitution, and because opposed to natural justice; and, further, that the action is to recover damages for negligence or fraud, and is barred by the statute of limitations."

The court held the provision of the Constitution in question to be self-executing, and placed upon it the construction already indicated. That construction of the Constitution of the state by the highest court in existence under it is binding upon the federal courts. Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, 27 L. Ed. 966.

It results that the District Court was right in overruling the demurrer.

The petition for revision is dismissed at the petitioner's cost.