[Civ. No. 4476. Third Appellate District.—January 23, 1932.]

M. H. MERRILL, Appellant, v. LOS ANGELES COTTON MILLS, INC. (a Corporation), et al., Respondents.

Libby & Sherwin and M. Tellefson for Appellant.

Farrand & Slosson, Newlin & Ashburn, A. W. Ashburn and William D. Gallagher, Jr., for Respondents.

PLUMMER, J.—The plaintiff began this action against the above-named corporation, the directors as trustees thereof, and a number of stockholders, to recover the sum of $27,094.90, alleged to be due the plaintiff for and on account of services performed by him as architect in preparing plans, specifications, etc., for the erection of a proposed cotton mill at or near the city of Los Angeles, by the above-named corporation.

The complaint alleges that the Los Angeles Cotton Mills, Inc., a corporation, was incorporated under the laws of the state of Delaware, on or about the twenty-fourth day of July, 1923, and on August 14, 1923, was authorized to do business in the state of California; that on March 1, 1924, its right to do business in the state of California was suspended for failure to pay its license tax, and on March 17, 1926, it was dissolved by operation of law for failure to pay taxes in the state of Delaware; that at the time of the dissolution of the corporation and forfeiture of its charter, the defendants W. H. Whiteside, Edward M. Fowler, John B. Miller, Wm. Lacy, R. I. Rogers and Gurney Newlin were the duly elected, qualified and acting directors of said corporation, and upon the dissolution of said corporation said directors became, by operation of law, trustees for the stockholders and creditors of the corporation. The complaint then alleges that within four years last past, the Los Angeles Cotton Mills, Inc., under an agreement in writing, became indebted to the plaintiff in the sum of $32,094.90, upon which there had been paid the sum of $5,000. It is further set forth in the complaint that said directors, acting as trustees, without securing a permit from the commissioner of corporations of the state of California, and in violation of section 309 of the Civil Code did pay all the debts of said corporation, excepting the account of the plaintiff, and did withdraw and pay to the stockholders all of the capital stock then paid in, and transferred and distributed all of the assets of said corporation amounting to the sum of $46,000, without paying the amount due the plaintiff, and that therefore said defendants are jointly

liable to the plaintiff for the amount unlawfully paid out and distributed.

The complaint further alleges an agreement whereby the plaintiff was to furnish engineering services preliminary and incident to the construction of a cotton mill, with its operating units to be erected in the city of Los Angeles, and plaintiff was to be paid for his services so rendered on the basis of four per cent of the cost of the completed project, or so much thereof as could be completed from plaintiff's engineering plans, and which services were to continue until said engineering work covering the entire cotton mills, was completed.

It is further alleged that the plaintiff rendered services under said agreement until on or about February 20, 1924, when plaintiff was ordered to discontinue his work in connection with the construction of said cotton mills, etc.

The complaint further alleges that plaintiff did not discover the fraudulent acts of the trustees of said corporation until within three years of the beginning of this action.

As an excuse for not discovering the alleged fraud, acting as trustees of said corporation in distributing the assets thereof, without permission first had and obtained from the corporation commissioner, the complaint alleges that on or about the seventh day of November, 1923, the plaintiff was elected a director of the corporation, and attended a directors' meeting on that date; that shortly thereafter, and within the same week he met with the directors on two different occasions, and then departed from Los Angeles to Boston, Massachusetts, and was thereafter ignored as a director, received no notices of any meetings, signed no waivers of any notice, received no copies of any minutes of the meetings, and was not at any meetings thereafter; that on or about March 1, 1924, plaintiff was ordered by the defendant, Los Angeles Cotton Mills, Inc., through its president, W. H. Whiteside, to discontinue his work in connection with said Los Angeles Cotton Mills project. (The date of this notice is elsewhere in the complaint given as February 20, 1924); that after receiving the notice just mentioned plaintiff made frequent demands upon the directors named herein as defendants, and each of them, for payment of moneys claimed to be due for engineering services; that he was referred by each director to the de-

fendant, Gurney Newlin, and was informed by Newlin that there was no obligation on the part of the corporation or the directors to pay plaintiff for his services; that during the summer of 1924, he requested of the defendant Newlin permission to inspect the corporate records of the company, and was refused access thereto; that plaintiff continued in his endeavor to secure payment of the moneys claimed to be due him without bringing suit, until on or about June 1, 1926, when he placed his claim in the hands of his attorney, Warren E. Libby, with instructions to commence action; that prior to June 1, 1926, plaintiff had not had access to the books of the corporation, and had not been informed, and did not know whether or not its debts had been paid, and did not know what disposition had been made of the corporate assets.

The complaint then goes on to allege that the defendants sued herein as trustees of the corporation, were men of high standing, etc. The plaintiff presumed that whatever acts were done in relation to said corporation and in relation to the discharge of their duties as directors, would be done legally and not in violation of any criminal or civil statute. That after plaintiff had placed his claim in the hands of his attorney, on or about June 1, 1926, his attorney made request of the defendant Gurney Newlin, for an inspection of the by-laws and minutes of said Los Angeles Cotton Mills, and was informed that said records had been mislaid, and on or about said date the said Libby also made request of the corporation commissioner for information as to whether or not defendant directors had secured a permit as required by section 309 of the Civil Code, for distribution of the assets of the corporation; that on or about June 15, 1926, the said Libby was informed by the office of the said corporation commissioner that no such permission had been issued, and on or about August 1, 1926, received for inspection the minute record and by-laws of said Los Angeles Cotton Mills, and that plaintiff herein learned for the first time, on or about July 1, 1926, that no permit had been issued, and for the first time learned that each of the directors had by resolution assented to the distribution, and distributed the assets of said corporation to the stockholders thereof.

The complaint is in eighteen counts, seeking to set forth a cause of action, first: under section 309 of the Civil Code; second: under section 400 of the Civil Code; and third:. under section 3 of article XII of the Constitution. The defendants, other than the Los Angeles Cotton Mills, Inc., a corporation, filed demurrers and answers to the plaintiff's complaint. Other than that the complaint does not state grounds sufficient to constitute a cause of action, the order of the court overruling the demurrers is not tendered for our consideration.

The record shows that after the plaintiff had begun a suit in the United States District Court against the above-named defendants, and while said action was pending for the same cause as herein alleged, the plaintiff accepted from the defendants W. H. Whiteside and Edward M. Fowler, the sum of $5,000 and released and discharged said defendants from any and all obligations, etc., for any cause of action set forth herein, and thereby discharged all of the defendants. This defense is tendered in the following language: "Defendants allege that prior to December 27, 1927, the plaintiff herein brought an action against the above named defendants, Los Angeles Cotton Mills Inc., a corporation, W. H. Whiteside, Edward M. Fowler, John B. Miller, Wm. Lacy, R. I. Rogers and Gurney Newlin, which said action was, on and prior to the said date, pending in the United States District Court for the Southern District of California; . . . that in said action plaintiff charges the defendants with the same matters and things which are alleged in the complaint herein as constituting a violation of the provisions of section 309, Civil Code of the State of California, and that in and by said complaint . . . the said W. H. Whiteside, Edward M. Fowler, etc., were charged as joint tort feasors with a violation of the terms of section 309 of the Civil Code of the State of California, in that it was alleged in said complaint that without securing a permit from the Commissioner of Corporations of the State of California, the said persons, as directors of the Los Angeles Cotton Mills, Inc., each assenting thereto in violation of said section 309, Civil Code, did pay all the debts of said corporation except the account of the plaintiff therein and herein, and did withdraw and pay to the stockholders of said corporation all of the capital stock which had been paid in,

and that they transferred and distributed all of the assets of said corporation without paying to the plaintiff the amount due him. According to information and belief, that on or about the said 27th day of December, 1927, . . . the said W. H. Whiteside and Edward M. Fowler did pay to the plaintiff therein and herein the sum of $5,000.00, which said sum was paid and received in full satisfaction and discharge of any and all liability or obligation of the said W. H. Whiteside and Edward M. Fowler for or on account of any and all the matters and things alleged in said complaint in the said action, . . . and that the said W. H. Whiteside and Edward M. Fowler were, upon receipt of the said sum of $5,000.00, from said plaintiff, released and discharged of any and all such obligation. It is further alleged that by reason of the discharge of the said W. H. Whiteside and Edward M. Fowler, these defendants and each of them were likewise, as a matter of law, discharged of any and all obligations for or on account of the matters and things, or any of the matters and things which are alleged in said complaint.''

By stipulation of counsel the grounds of defense just set forth were deemed to have been incorporated into and set forth in the respective answers of all of the defendants. Upon the trial of the action it appears that all of the defendants objected to the introduction of any evidence in support of counts 1 to 16, which objection was sustained by the court, as appears from the recital preceding the judgment made and entered herein. Thereafter plaintiff entered a dismissal as to counts 17 and 18. Count 17 of the complaint sets forth that prior to the incorporation of the Los Angeles Cotton Mills, Inc., the defendants, sued herein as trustees of the corporation, entered into an agreement in writing with plaintiff, whereby the plaintiff agreed to furnish engineering services preliminary and incident to the construction of a cotton mill, with its operating unit to be erected in the city of Los Angeles, and was to receive for his services four per cent of the cost of the completed project, or so much thereof as could be completed from plaintiff's engineering plans; that said defendants received and accepted the services so rendered by the plaintiff, and the benefits thereof, and agreed to pay plaintiff therefor, as provided in said agreement; that on the twentieth day of

February, 1924, the said defendants notified plaintiff to discontinue the services and work in connection with the construction of said cotton mills, and that at said time there was due the plaintiff the sum of $32,094.90; that nothing had been paid thereon except the sum of $5,000.

The eighteenth cause of action sets forth that the plaintiff rendered valuable services to the defendants sued herein as trustees of said corporation, and that the value of said services was the sum of $32,094.90, upon which there had been paid the sum of $5,000, leaving a balance due in the sum of $27,094.90. No testimony was offered in support of counts 17 and 18 of the plaintiff's complaint, and as just stated, dismissal as to said counts was entered by the plaintiff.

The court found that the defense of the defendants which we have set forth herein, based upon the discharge of two of the defendants from all obligations, is as follows: "The court finds that all of the allegations of the fifth further and separate defense which are contained in paragraph III of the amendment to answer of defendants, John M. Miller et al., are, and each of said allegations is true." The court then drew the conclusions of law that none of the counts which are stated in the plaintiff's complaint, designated as from the first to the sixteenth causes of action, inclusive, set forth facts sufficient to constitute a cause of action; and then drew its further conclusion of law as follows: "By reason of the facts which are found in paragraph I of the findings of fact herein, the said discharge or release of said W. H. Whiteside and Edward M. Fowler, operated as a matter of law to discharge, and did discharge each and every of the defendants herein of and from any and all obligation for or on account of the matters and things which are alleged in the said first to sixteenth counts, inclusive, as the complaint herein is amended." Judgment was entered for the defendants as trustees of the corporation, and in favor of all of the defendants individually.

The recital preceding the findings and also preceding the judgment found in the judgment-roll shows that the court proceeded to take testimony relative to the release and discharge of the defendants Whiteside and Fowler, but as the cause is before us upon the judgment-roll alone, the

terms and conditions of the release and discharge of these defendants is not before us for consideration.

Upon this appeal it is argued at length by the respective counsel, first by the appellant, that sections 309 and 400 of the Civil Code, and section 3 of article XII of the Constitution, apply to foreign corporations. On the part of the respondent it is argued that neither of said sections, nor the section of the Constitution have any application to foreign corporations. It is further argued on the part of the respondent that the plaintiff's cause of action is barred by the provisions of sections 338 and 359 of the Code of Civil Procedure, and that the facts set forth in the complaint are not sufficient to show that the plaintiff did not discover and have knowledge of the alleged fraud until within three years, and is not excused from having discovered all the facts relating thereto under subdivision 4 of section 388 of the Code of Civil Procedure.

The complaint shows from the excerpts which we have set forth herein that the plaintiff was directed to discontinue his services, as alleged by him, once on the twentieth day of February, 1924, and again on or about the first day of March, 1924; that he began making demands for payment for his services from that time on until June, 1926. A period of something over twenty-seven months elapsed after the plaintiff had been directed to discontinue his services, before he placed his alleged cause of action in the hands of his attorney. There is nothing in the complaint showing that the plaintiff, during the period of said twenty-seven months, made any effort whatever to obtain inspection of the minutes of the corporation; nor is there anything in the complaint alleging or showing that any demand was ever made upon anyone having possession of the books of the corporation, for an inspection thereof; nor is there anything in the complaint showing why the plaintiff did not discover that the corporation commissioner of the state of California had not granted permission to the trustees of the corporation to make distribution of his assets. There is nothing in the complaint showing that the plaintiff ever made any inquiries as to whether the corporation, after it ceased to do business on the 1st of March, 1924, had any assets or what it had done therewith. The complaint in this action was filed on

February 15, 1928, or within a few days of being four years after the plaintiff was notified to cease work on the plans for the proposed building of the cotton mills. Again, there is nothing in the complaint showing what work was done by way of engineering services; nor is there anything in the complaint showing that any proposed cotton mills were ever erected. The fact that the company had ceased to do business; the fact that no mills were erected, or being erected; the fact that for over two years the trustees of the corporation had denied any liability to the plaintiff, were sufficient, we think, to put any reasonable person upon inquiry, and that the slightest diligence in this respect would have disclosed just what the trustees had done with the assets of the corporation; and also, it was readily ascertainable from the commissioner of corporations of the state of California whether any permission had been granted for the distribution of the assets of the corporation. The fact that the trustees of the corporation were considered by the plaintiff to be "high-class men" we do not think sufficient to excuse the plaintiff from prosecuting his inquiries, when the same "high-class men" had denied any liability for or on account of the plaintiff's claim for alleged services to the corporation. ██ That means of knowledge is equivalent to knowledge and charges one presumptively with knowledge of the alleged fraud, we have only to cite the case of *Lady Washington Consol. Co. v. Wood,* 113 Cal. 482 [45 Pac. 809].

By reason of what has been said, and also what we will have to say in relation to the finding of the court as to the discharge of the defendants, we do not deem it necessary to discuss whether sections 309 and 400 of the Civil Code, or section 3 of article XII of the Constitution as it then existed applies to foreign corporations, as contended for by the appellant, or only as to domestic corporations, as claimed by the respondent.

██ In support of the court's finding of the discharge of all the defendants, it will be presumed upon this appeal that the testimony introduced upon the trial was sufficient to support the finding, and that the discharge was sufficiently broad and comprehensive in its terms to support the finding of the court and conclusion of the court that all of

the defendants had been discharged and that the plaintiff had received full satisfaction.

In so far as the defendants are concerned it seems to be well settled that the liability imposed by section 309 of the Civil Code, is penal and not contractual in its nature. In *Moss* v. *Smith,* 171 Cal. 777 [155 Pac. 90], we find a case where this question is thoroughly considered, and a long list of authorities cited in support of the holding of the court that section 309 of the Civil Code, in so far as it relates to defendants, is construed as penal.

To the same effect is the case of *Dean* v. *Shingle,* 198 Cal. 652 [46 A. L. R. 1156, 246 Pac. 1049, 1053]. We quote from the opinion as follows: "Statutes making officers and directors of a corporation responsible to its creditors for losses growing out of the wrongful or fraudulent conduct of such officers or directors are regarded by most courts as of a penal nature, and as not arising out of contracts. (Citing *Brown* v. *Major,* 164 Fed. 673, 677 [90 C. C. A. 489].) In this state it is well settled that a statute which provides for making one liable for the debts of another, and prescribed how and under what circumstances he shall be held thus liable, is penal in its nature. (Citing *Snell* v. *Bradbury,* 139 Cal. 379, 382 [73 Pac. 150]; *Moss* v. *Smith,* 171 Cal. 777 [155 Pac. 90].)" The court then reviews a number of cases, including the case of *Winchester* v. *Howard,* 136 Cal. 432 [89 Am. St. Rep. 153, 64 Pac. 692, 69 Pac. 77], and then holds in substance that whatever has been decided to the contrary in this and other states, that the construction heretofore stated in relation to said section 309 of the Civil Code, that it is penal in its nature is established in this state.

To the same effect is the case of *Judson Mfg. Co.* v. *Wyckoff,* 60 Cal. App. 305 [213 Pac. 269], where it is said that in so far as the directors are concerned, it is to be considered that section 309 of the Civil Code is penal in its nature, and its provisions are to be strictly construed.

In 14a C. J. 227, section 2044, after referring to actions against trustees and directors, the character of the actions are thus stated: "As has been stated a majority of the statutes under consideration are regarded as penal. Consequently, actions upon them are actions for penalties. When this is the view taken, the action is to be classed as actions *ex delicto,* rather than actions *ex contractu.* But in juris-

dictions where the statutes are not regarded as penal, liability thereunder arises *ex contractu* and not *ex delicto.*"

By reason of what has been said as to the holding in California, the statement in Corpus Juris that the action must be regarded as *ex delicto,* is the rule in this state.

Section 309 of the Civil Code as it read at the time of the beginning of this action, imposed a legal duty upon directors of corporations, and any violation of that duty constituted an actionable tort, and we think comes under the definition found in 24 California Jurisprudence, page 590, where the text reads: "In order to constitute an actionable tort there must be a legal duty imposed by statute or otherwise, owing by the defendant to the one injured, for in the absence of such duty, any damage caused is injury without wrong." Following the citation which we have just given are several sections dealing with actionable torts based upon statutes, making those who act in concert, jointly and severally liable. The complaint in this action alleges that the defendants acted in concert to effectuate the tort complained of.

In *Peterson* v. *Ball,* 211 Cal. 461 [74 A. L. R. 187, 296 Pac. 300], some of the cases which we have cited were under consideration in connection with section 309 of the Civil Code, where it was held that a right of action based upon a violation of section 309, was penal in character, and not assignable.

The court, referring to the case of *Moss* v. *Smith, supra,* said: "In that case, after an exhaustive review of the authorities, not only of this state, but in other jurisdictions, this court quotes: 'In all of these jurisdictions it is held that a creditor's bill is the proper method of establishing rights under like statutes, and in all of them the statutes themselves are declared to be penal in their nature. Indeed, the whole matter may be summed up in the statement that even if section 309 be remedial so far as the creditors are concerned, it is still punitive so far as the directors are concerned.'" To the same effect is the recent case of *Western Mortgage & Guarantee Co.* v. *Gray,* █(Cal.) [300 Pac. 961].

■ Where several tort-feasors have been sued jointly in a single action, the law seems to be well settled that if payment is made by one of them, however large or small, in settlement and discharge of the claim again him, such payment and settlement operates as a discharge of all against whom the action is prosecuted as joint tort-feasors. (*Chetwood* v. *California Nat. Bank,* 113 Cal. 414 [45 Pac. 704].) This was an action instituted by the plaintiff as a stockholder against certain directors to recover from them, for the use and benefit of the corporation, a sum of several thousand dollars alleged to have been lost to the corporation by reason of the negligent misconduct in the management of its affairs. (*Bogardus* v. *O'Dea,* 105 Cal. App. 189 [287 Pac. 149] ; *Johnson* v. *Pickwick Stages System,* 108 Cal. App. 279 [291 Pac. 611].) See, also, 22 California Jurisprudence, 763, where the text reads: ''A release of one of two or more joint tort feasors operates as a release of all, and estops the plaintiff from asserting that the person released was not in fault and not liable for the injury. The bar does not arise from any particular form that the proceeding assumes, but from the fact that the injured party has actually received satisfaction. A plaintiff can have but one satisfaction for the injury complained of, irrespective of whether the payment was made in a large or in a small amount, and when he releases one tort feasor he thereby announces that he has received satisfaction.''

Not having offered any testimony under counts 17 and 18 as to the value of his services, there is nothing in the record showing that anything was actually due to the plaintiff. ■ As stated herein, the appeal is upon the judgment-roll alone, and there appearing nothing to the contrary, it will be presumed that the payment made to the plaintiff by Whiteside and Fowler, fully compensated him for all services rendered.

As stated in 2 California Jurisprudence, 690: ''Unless additional matter is brought into the record by a bill of exceptions, or a reporter's transcript, or, under the former practice, by a statement on motion for new trial, or a statement on appeal, the appellate court is limited in its determination to the questions presented by the judgment roll.'' And as stated on page 877 of the same volume:

"It is the duty of an appellant to point out the evidence or lack of evidence showing a finding assailed is unsupported by evidence. Findings not attacked on the ground that they are unsupported by the evidence must be presumed to be true. And in the absence of any transcript of the evidence, or bill of exceptions, and of a specification of insufficiency of the evidence to justify the verdict or decision, when required, it will be presumed that the evidence offered in support of the findings was competent and material to the issues, was received without objection, and was sufficient to support the facts found."

Under the rules herein set forth, this court, upon appeal, must hold that whatever the nature of the discharge upon which the finding of the court is based, that the plaintiff has been fully compensated for all services rendered. And in this particular we may call attention to the fact that the pleadings show that the corporation was organized in July, 1923, and authorized to do business in this state about the middle of August, 1923, and discontinued its operations after a lapse of only about five months; that the units composing the projected cotton mills existed only on paper.

The complaint in this action alleges in one of its counts that the plaintiff was to be compensated at the rate of four per cent upon the cost of the completed project, or so much thereof as might be completed, and there is no allegation in the complaint that any portion of the projected units were either started or completed. But irrespective of the fact that the record shows that the Los Angeles Cotton Mills, Inc., was only a "paper" project, the findings of the court, supported as we have stated, precludes the plaintiff in this action.

The judgment is affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.