[Civ. No. 24223. Second Dist., Div. Three. Oct. 14, 1960.]

ANNIE JONES, Appellant, v. TONY ALLEN et al., Defendants; LAURETTE G. SUMMERIL, Respondent.

Hirson & Horn, Herbert L. Hirson, Theodore A. Horn and George Zucker for Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Respondent.

FORD, J.—This is an appeal by the plaintiff from a judgment in favor of defendant Laurette G. Summeril in an action for personal injuries sustained by the plaintiff as a pedestrian when she was hit by an automobile driven by Tony Allen.

The plaintiff sought to establish liability as against the defendant Summeril under the provisions of section 402 of the Vehicle Code (as such section existed on the date of the accident, December 15, 1955).[1] On December 3, 1955, there had been an apparent sale of the automobile to Allen by the defendant Summeril, a used-car dealer doing business under the name of Hoosier Motors. But, unknown to Summeril, Allen was a convict on parole whose civil rights had been suspended under the provisions of section 2600 of the Penal Code.[2] Relying on the provision of section 1556 of the Civil Code that "persons deprived of civil rights" are not capable of contracting, it was the theory of the plaintiff that the de-

---

[1]Section 402 of the Vehicle Code was then in part as follows: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

[2]While on parole, Allen had the civil status of a prisoner. (*In re Sanders*, 47 Cal.App. 368, 370 [190 P. 647].) In 1955, section 2600 of the Penal Code was as follows: "A sentence of imprisonment in a State prison for any term less than life suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or power during such imprisonment. But the board [the Adult Authority] may restore to said person during his imprisonment such civil rights as the board may deem proper, except the right to act as a trustee, or hold public office or exercise the privilege of an elector or give a general power of attorney."

fendant Summeril was the owner of the automobile at the time of the accident. Her position is summarized in her opening brief as follows: "Appellant concedes that the defendant Hoosier Motors made timely notification of a purported transfer to the defendant Allen in an effort to comply with sections 177 and 178 of the Vehicle Code.[3] However, appellant maintains, that this compliance though timely, was ineffective to release the defendant Hoosier Motors from liability for negligence as owner, since the fulfillment of the requirements set forth in these sections are predicated upon a valid sale or transfer of title."

The issue thus posed was tried first by the court. The evidence established that Allen had been convicted of burglary in the second degree. In December, 1955, he was on parole. Authority or permission to enter into contracts had not been given to Allen by the Adult Authority.[4] On the date of the purported sale, December 3, 1955, Allen was given possession of the 1940 Ford automobile. It was a cash transaction, although the purchase order indicated that a balance was owing.

Our attention has been directed to *Rosman* v. *Cuevas*, 176 Cal.App.2d Supp. 867 [1 Cal.Rptr. 485], wherein it was held that a conditional sales contract for the purchase of an automobile was void insofar as a parolee was concerned. The court stated that the sole issue was whether the parolee had the capacity to make the contract and whether the vendor was

[3]In December, 1955, section 177 of the Vehicle Code was in part as follows: "Every dealer upon transferring by sale, lease or otherwise any vehicle, whether new or used, of a type subject to registration hereunder, shall, not later than the end of the next business day of the dealer, give written notice of such transfer to the department upon an appropriate form provided by it. . . ." At that time, section 178 of the Vehicle Code was in part as follows: "An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner in addition to the foregoing has fulfilled either of the following requirements: . . . (2) When such owner has delivered to the department or has placed in the United States mail, addressed to the department, either a notice as provided in Section 177, within the time prescribed in such section, or appropriate documents for registration of such vehicle pursuant to such sale or transfer."

[4]In 1955, section 3054 of the Penal Code was in part as follows: "The board may permit paroled persons civil rights. . . . The scope or extent of such civil rights shall be determined by such board as, in the judgment of such board, is for the best interest of society and such paroled person."

aware of a lack of such capacity at the time of the transaction. It was clear from the record that the parolee, when she was asked to sign the agreement after her husband had done so, informed the seller of her lack of capacity and was told by the seller to sign in spite thereof. In the case presently before the court, there is no evidence that the seller knew that Allen was on parole. The determination of the question here presented would appear to be governed by the construction to be given to the provisions of section 402 of the Vehicle Code rather than by the nature or validity of the transaction between Allen and Summeril.

The doctrine of imputed liability as found in section 402 of the Vehicle Code represents a statutory departure from the prior law in this state. As stated in *Burgess* v. *Cahill*, 26 Cal. 2d 320, at page 323 [158 P.2d 393, 159 A.L.R. 1304]: "Prior to the enactment of the imputed liability statute the general rule was that the owner of an automobile who was not present at the time of the negligent act which caused injury to a third person could not be held liable unless it was shown that the person in charge was the agent or servant of the owner and at the time was engaged in his service. (*Buelke* v. *Levenstadt*, 190 Cal. 684 [214 P. 42].)" In *Weber* v. *Pinyan*, 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407], the Supreme Court stated the approach to be followed in the construction of such legislation. It was said, at pages 229-230: "Since the imputed negligence statute created a new right of action, giving a remedy against a party who would not otherwise be liable, it must be strictly construed. Such was the holding in *Cook* v. *Superior Court of Los Angeles County*, 12 Cal.App.2d 608, 611 [55 P.2d 1227, 1228], where the court cited 59 Corpus Juris, page 1129, reading: ' "A statute creating a new liability, or increasing an existing liability, or even a remedial statute *giving a remedy against a party who would not otherwise be liable*, must be strictly construed in favor of the persons sought to be subjected to their operation." ' Numerous cases were cited in support of the text to which was added *Leppard* v. *O'Brien*, 225 App.Div. 162 [232 N.Y. Supp. 454] (affirmed in 252 N.Y. 563 [170 N.E. 144]), a case involving a similar statute and in which the court said: 'If a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed.' In *Swing* v. *Lingo*, 129 Cal.App. 518, 526 [19 P.2d 56], a case under section 1714¼ [Civ. Code] the court said: 'Since the statute imposes a new and unusual liability which partakes

of the nature of a penalty, it should not, at least, receive a construction favoring the imposition of such liability. (*Snell* v. *Bradbury,* 139 Cal. 379, 382 [73 P. 150]; *Merrill* v. *Los Angeles Cotton Mills, Inc.,* 120 Cal.App. 149 [7 P.2d 329].)' " (See also *Miller* v. *Berman,* 55 Cal.App.2d 569, 572 [131 P.2d 18].)

While there may be limitations imposed with respect to a parolee's use of an automobile (see Pen. Code, § 3052),[5] there appears to be no express prohibition against his ownership of an automobile as an item of personal property. This would be true of an automobile owned by him at the time of conviction, where no independent ground for forfeiture exists, because it is provided in section 2604 of the Penal Code that: "No conviction of any person for a crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law; and all forfeitures to the people of the State, in the nature of a deodand, or where any person shall flee from justice, are abolished." (See *People* v. *Lawrence,* 140 Cal.App.2d 133, 138 [295 P.2d 4]; *Davis* v. *Superior Court,* 175 Cal.App.2d 8, 17-18 [345 P.2d 513]; Comment, 26 So.Cal.L.Rev. 425.) Nor would there appear to be any impediment to the acquisition by a parolee, who had been sentenced to imprisonment in the penitentiary for a term less than life, of ownership of an automobile through inheritance. (See *Estate of Dickinson,* 51 Cal.App.2d 638 [125 P.2d 542].)

Statutes relating to civil death or the suspension of civil rights are penal in nature and are to be strictly construed. (*Hayashi* v. *Lorenz,* 42 Cal.2d 848, 852 [271 P.2d 18].) They are unlike statutes designed for those such as infants who need the protective arm of the law. While such penal provisions work a hardship, and properly so, on the person convicted of crime, a person dealing with a parolee in the ordinary course of business, without notice or knowledge of his status, should not be brought within the orbit of such hardship. The penal effect was intended for the convict, not for a person in the position of the respondent in the present case. The respondent had done everything which a reasonable man would assume was necessary to comply with the Vehicle Code so as to be insulated against liability under section 402 of the Vehicle Code as that section existed in 1955. We can find no sound basis for holding that the re-

---

[5] In this case, no question is presented as to the eligibility of a parolee with respect to the matter of a license to operate vehicles.

spondent remained an owner of the vehicle within the provisions of that section.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied November 4, 1960, and appellant's petition for a hearing by the Supreme Court was denied December 7, 1960.