ALLISON *v.* COAL COMPANY.

(*Knoxville.* October 3, 1888.)

1. CORPORATIONS. *Director's individual liability for debts of company.*

Where the charter of a corporation provides that: "If the indebtedness of said company shall at any time exceed the capital stock paid in, the directors assenting thereto shall be individually liable to the creditors for said excess," in such case, the directors are individually liable for such specific debts only as were contracted with their assent in excess of the paid-up capital and remain unpaid after the corporate assets are exhausted.

Acts construed: Acts 1875, Ch. 142, § 11 (Code, § 1858 (M. & V.); § 1461 (T. & S.).

Case cited and approved: 93 U. S., 231.

2. SAME. *Same. Sufficiency of evidence.*

The evidence in this case, set out in the opinion, is held sufficient to charge the directors individually with debts of the corporation.

3. WITNESS. *Impeachment. Contradictory statements.*

In order to impeach a witness by his former inconsistent statements, he must be asked about them. Merely filing his former deposition containing them is not sufficient.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

LUCKY & YOE for Allison.

JAS. COMFORT, WEBB & McCLUNG, and TAYLOR & HOOD for Defendants.

LURTON, J.   This is a bill filed by creditors of the defendant corporation: first, to have the corporation wound up as an insolvent ·corporation, and its assets equally distributed among all its creditors; second, to hold the directors, who are made defendants, individually liable for all debts created in excess of the capital stock paid in.   The first relief sought has been obtained under the decree of the Chancellor, and no error is assigned thereto.

The corporation is a coal mining company, and was organized in June, 1884, under Section 11 of the general incorporation Act of 1875, with a capital of only $2,100, all of which was paid in. The company, at the time of its organization, by the assent of all the directors, assumed the indebtedness of a partnership which had existed between four of the five corporators.   The indebtedness thus assumed exceeded the capital stock by $3,103.18. The question as now presented upon this transcript involves only the responsibility of defendants John Chumbley and ⸺ Donaldson, both of whom were directors from the time of the organization of the corporation until December 5, 1884, when they sold out their stock and resigned from the board. At the time of their resignation the debts, including debts due to two of the directors, Coffin and Brooks, exceeded the capital stock some $20,000. The debts now due and unpaid, including the claims of Coffin and Brooks, exceed somewhat this sum, but the larger part is due to the defendants, Coffin and Brooks, and no question is before us

concerning this. The unpaid debts pressing for a decree against the directors individually may be divided into two classes: first, those created before the resignation of Chumbley and Donaldson; second, those created after such resignation. The first class consists entirely of debts for machinery used in the mines, and as to these the defense of both Chumbley and Donaldson is, that they did not assent to their creation.

The debts assumed at time of organization and in excess of capital have all been paid. But the complainant contends that the liability which attached to the directors individually by their assent to the creation of an indebtedness in excess of capital stock is not discharged by such payment. That creditors whose debts were subsequently created have a right to look to the liability incurred by the first breach of trust, and that the liability thus created constitutes a fund for the benefit of *all* creditors whose debts were in excess of capital stock.

This contention involves a construction of the clause in defendant's charter which, in certain cases, imposes an individual liability upon the directors. This clause is as follows: "If the indebtedness of said company shall at any time exceed the capital stock paid in, the directors assenting thereto shall be individually liable to the creditors for said excess." Acts of 1875, page 248; M. & V. Code, Sec. 1858.

We think that the purpose of the Legislature, as manifested in this provision of the act authorizing

the incorporation of mining and manufacturing companies, was to prevent the creation of debts in excess of capital stock by declaring such management to be a breach of trust. Individual liability is assumed by all directors assenting to such breach and in favor of all creditors who shall suffer thereby. The primary liability remains upon the corporation, and only in the event of the failure and inability of the corporation to pay does a right of action arise in favor of the creditor, whose debt was made through the breach of trust.

We do not think that it was the legislative purpose to make the assenting directors individually liable to any but a creditor whose debt was made with the assent of such director in excess of capital stock. If the debt of such a creditor is subsequently paid he has not suffered by such breach, and no subsequent creditor can enforce in his own favor a liability discharged by such payment. In other words, the liability of the director depends upon three conditions: first, assent by him to the creation of the debt upon which he is sued; second, that the debt has not been paid; third, that the corporation is insolvent. Unless the very debt upon which it is sought to hold the director to individual liability was created by the assent of the director, it is not the case provided for by the charter. This clause in our general incorporation act is essentially identical with the act of Congress of May 5, 1870, regulating the creation of corporations within the District of Columbia. This act

has been construed by the Supreme Court of the United States, who say: "We are of opinion that the fair and reasonable construction of the act is: That the trustees who assent to an increasing of the indebtedness of the corporation beyond its capital stock are to be held guilty of a violation of their trust; that Congress intended that, so far as this excess of indebtedness over capital stock was necessary, they should make good the debts of the creditors who had been the sufferers by their breach of trust; that this liability constitutes a fund for the benefit of all the creditors who are entitled to shares in it in proportion to the amount of their debts, so far as may be necessary to pay those debts." *Horner* v. *Henning*, 93 U. S., 231.

It is no answer to say that the old debt may have been paid off by the creation of a new one. If this should be so, then the directors who assented to the new debt, if beyond the capital stock, are liable individually to the creditor whose money paid off the old debt, and his remedy is against them on this latter assent and not upon their former breach of trust. This provision is a sound and wise one. The director who consents that his corporation may involve itself in debt beyond its capital stock, does it with the knowledge that he is committing a breach of trust, and that individual responsibility will attach in favor of such debts as were made in excess of capital in the event of corporate insolvency. This liability cannot but result in more cautious management of

corporate affairs, and this is the extent of the liability, which we think, by a fair and reasonable construction, is imposed by the charter.

This brings us to the question as to whether the defendants, Chumbley and Donaldson, assented to the creation of any of the debts yet unpaid. The only debts in controversy, to the creation of which it is contended they assented, were made under and by virtue of the action of the board of directors taken upon the 8th of July, 1884, while both were in the board and both present. Chumbley was then the president of the corporation and presided at that meeting.

The action of the directors, as shown by the minutes as taken down by Mr. Coffin, one of the directors and secretary and treasurer of the corporation, is in the following words: "Upon motion of Mr. Brooks, H. Coffin was authorized to proceed North and buy at least three Lechnor mining machines and an air compresser of sufficient power to run same, and all necessary piping, machinery, etc., *and that he be authorized to use the company's name in making such purchases, provided said H. Coffin and John M. Brooks hold the company harmless.*"

Several of the debts now filed were created in the purchase, by Coffin, of machinery of the kind described. If this resolution contains the action of the board, and same was assented to by Chumbley and Donaldson, then it is clear that the machinery was rightfully bought in the name of the com-

pany, and that the debts thus created, being in excess of the capital stock, impose individual liability upon them.

Both Chumbley and Donaldson earnestly insist that they never did assent to the purchase of this machinery in the name of the company; that Coffin and Brooks agreed to buy it in their own name and upon their own responsibility, and that it was agreed that in the event the machines proved a success the company were to allow them a royalty equal to the saving in labor. This contention is clearly in conflict with the resolution as found on the minute book of the board. Both Chumbley and Donaldson agree in stating that the resolution, as spread on the minutes, is not the action of the directors, and that neither of them ever assented to the purchase of the machinery by the corporation or in its name. While Donaldson fully sustains Chumbley in his account of the matter, yet his evidence is weakened by the fact that he is shown to have admitted to the witness, Perkins, before the institution of this suit, that they had made a mistake by giving their "consent to that," having reference to the purchase of this machinery. On the other side, Coffin testifies to the correctness of the minutes and to the assent of both Chumbley and Donaldson to the purchase on the terms shown by the resolution. He says that Chumbley had always opposed the purchase of the machinery by the company, but when he and Brooks agreed to hold the company harmless by

furnishing the company the money to meet the bills for such machinery, that he at once assented. He says that "holding the company harmless" meant only that they were to protect the credit of the company.

The deposition of Brooks, taken in this case, substantially sustains Coffin. This witness was examined in another case heard with this, and his deposition in this other case is relied upon as contradicting his statement that Chumbley finally assented to the purchase of the machinery in the company's name. We have carefully compared his two depositions, and are of opinion that there is no conflict. Besides, he was never given an opportunity to explain the apparent conflict, and the agreement that depositions taken in one case may be read in the other will not obviate the familiar rule of evidence that a witness may not be attacked by proof of contradictory statements without he is given an opportunity to explain by calling his attention to the matter relied upon to contradict him.

In this almost balanced state of the evidence, we think the scale is turned in favor of the complainants by two considerations: first, the machinery came marked to the company, and this fact was known to both Chumbley and Donaldson, and yet they made no inquiry or complaint; indeed, in August, 1885, Chumbley attached this very machinery as the property of the corporation and caused it to be sold as such; second, the minute book of the corporation must be treated as evidence in the

nature of an admission and as such *prima facie* evidence of the action of the board. This minute being made shortly after the transaction, and having, at all times, been accessible to all the directors, and especially to Mr. Chumbley, the president, is *prima facie* evidence against the directors as to their official action. There was no motive for its falsification by the secretary.

These considerations lead us to the conclusion that both Chumbley and Donaldson did assent to the purchase of the machinery in the name of the company, and that as the debts of the company already exceeded the capital stock paid in, that they, together with Coffin and Brooks, are individually liable to the creditors who hold unpaid claims for machinery purchased under the resolution of July 8, 1884. The decree of the Chancellor holding otherwise will be reversed, and there will be a decree here for such debts with interest less any *pro rata* which the assets of the company may have paid.

The royalty which accrued to the owners of the mine operated by the defendant corporation while in the hands of the receiver was a first charge on the funds in the hands of the receiver, being a receiver's debt.

There was no error in the decree of the Chancellor so holding.

The costs of this appeal will be paid by defendants Chumbley and Donaldson.