## MOULTON *v.* CONNELL-HALL-MCLESTER COMPANY.

### (*Nashville.* January 30, 1894.)

1. CORPORATIONS. *Suit by creditor to recover outstanding corporate assets.*

   A few, less than all, of the creditors of an insolvent corporation, that has made a general assignment, cannot maintain suit to recover an outstanding asset of the company for their exclusive benefit, or at all, unless the assignee has refused, upon proper request, to bring the suit. (*Post, pp. 381–385.*)

   Case cited: Wallace *v.* Bank, 89 Tenn., 530.

2. SAME. *Enforcement of director's statutory liability.*

   The statutory liability of directors for debts of the corporation, contracted, with their consent, in excess of the amount of the capital stock paid in, cannot be enforced by the suit of a few, less than all, of the creditors of the corporation, whose debts have been thus created, but must be recovered by suit brought by all, or by some on behalf of all, of the creditors for whose debts the directors of the company have rendered themselves liable. (*Post, pp. 385–388.*)

   Cases cited: 93 U. S., 231; 20 Wall., 520; 113 U. S., 302.

3. SAME. *Directors' statutory liability. Assent.*

   The facts of this case do not show such assent of the directors to the creation of debts by the corporation in excess of its paid-up capital stock, as is requisite to fix upon them the statutory liability under that clause of the company's charter providing: "If the indebtedness of such company shall, at any time, exceed its capital stock paid in, the directors assenting thereto shall be individually liable to creditors for such excess." (*Post, pp. 378–381, 385, 386.*)

   Act construed: Acts 1875, Ch. 142, § 11.

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. ANDREW ALLISON, Ch.

The undisputed indebtedness of the Connell-Hall-McLester Company, as a corporation, to the complainants, is as follows: To C. H. Moulton, $1,402.89; to Eaton, Stetson & Co., $5,561.23; to C. B. Lancaster & Co., $1,590.72; to J. W. Walcott, $3,521.90.

These debts consisted of amounts due to the respective complainants on running accounts, incurred by said company in the purchase of goods, from time to time, in the operation of its mercantile business. These accounts accrued in part before January 20, 1891, and in part after that date.

The complainants averred that their respective debts were incurred by said company in excess of its paid-up capital stock of $250,000, and that its directors, the defendants, C. W. McLester, L. W. Hall, A. P. Connell, J. T. Benson, J. M. Williams, W. A. Connell, and L. T. Armstrong, had assented to said indebtedness with knowledge that the company was indebted in excess of its paid-up capital stock, and that they were, therefore, personally liable for said debts, under that clause of the company's charter providing that "if the indebtedness of such company shall at any time exceed the capital stock paid in, the directors assenting thereto shall be individually liable to the creditors for such excess."

The individual defendants admitted themselves directors, but denied, by sworn answer, that they had assented to the creation of said indebtedness

Moulton v. Connell-Hall-McLester Co.

with knowledge that it exceeded the "capital stock paid in."

The entire evidence upon this aspect of the case consisted of stipulations of counsel, which are as follows:

"In this cause it is agreed that on January 20, 1891, the president of the Connell-Hall-McLester Company submitted to the stockholders of the company, at their annual meeting, the following report of the condition of the company, which was spread on the minutes:

ASSETS.

| | | |
|---|---:|---:|
| Real estate . . . . . . . . . . . . . . . . . . . . . . | | $ 136,137 28 |
| Due on wholesale accounts . . . . . . . . $ 210,489 05 | | |
| Due on retail accounts . . . . . . . . . . 40,982 79 | | |
| Due on sundry accounts . . . . . . . . . 1,575 10— | 253,046 94 | |
| Bills receivable . . . . . . . . . . . . . . . . | 8,436 80 | |
| Furniture and fixtures . . . . . . . . . . . . . . | 12,986 36 | |
| Cash on hand and in bank . . . . . . . . . . . . | 7,185 78 | |
| Taxes account . . . . . . . . . . . . . . . | 298 35 | |
| Earned interest . . . . . . . . . . . . . . . | 1,059 66 | |
| Prepaid interest . . . . . . . . . . . . . . . | 754 52 | |
| Prepaid insurance . . . . . . . . . . . . . . . | 1,745 14 | |
| Stock on hand, per inventory . . . . . . . . . . . . | 286,244 27 | |
| Team account . . . . . . . . . . . . . . . . | 768 40 | |
| Total . . . . . . . . . . . . . . . . . . . | | $ 708,663 50 |

LIABILITIES.

| | |
|---|---:|
| Capital stock . . . . . . . . . . . . . . . . . . | $ 239,269 14 |
| Purchase account, Eastern bills . . . . . . . . . . . . | 259,531 74 |
| Bills payable . . . . . . . . . . . . . . . . . . . | 102,434 89 |
| Bills payable on real estate, due 1892 . . . . . . . . . | 10,000 00 |
| Mortgage payable on real estate . . . . . . . . . . . . | 50,000 00 |
| Due employes, and sundry other accounts on fixtures, etc. . | 9,894 12 |
| Guarantee account . . . . . . . . . . . . . . . . | 6,751 28 |
| Profits for 1890 . . . . . . . . . . . . . . . . . . | 30,782 33 |
| Total . . . . . . . . . . . . . . . . . . . | $ 708,663 50 |

"After the report the company continued to buy and sell goods, etc., until the time of its assignment, without protest or objection by defendants to such continuation of the business.

"It is further agreed that the by-laws of the Connell-Hall-McLester Company provided 'that there shall be an executive committee, composed of the president, first and second vice-presidents, who shall have control of the business of the company in all its details, under the general direction of the board of directors.'

" C. W. McLester was the president of the company from January 7, 1890, to January 20, 1891, and, during the same time, L. W. Hall was first vice-president, and A. P. Connell second vice-president.

"On January 20, 1891, A. P. Connell became president, and L. W. Hall first vice-president, and remained such until the company assigned. After January 20, 1891, the position of second vice-president was vacant, and there were only two members of the executive committee.

"It is further agreed that the Connell-Hall-McLester Company, on the fourth day of June, 1891, made a general assignment to the Nashville Trust Company of all its property of every kind, including choses in action, rights and privileges of every nature and kind, for the equal and *pro rata* benefit of all its creditors.

"And it is further agreed that on the first day of January, 1891, the liabilities of the Connell-

Hall-McLester Company exceeded the total amount of the paid-up capital stock of the company, and that the liabilities of the company continuously exceeded the paid-up capital stock of the company from the first of January, 1891, until the company made its assignment in June, 1891. It' is further agreed that, at the time the goods for the price of which complainants claim a debt against the said Connell-Hall-McLester Company were shipped and delivered to said company, its indebtedness exceeded the amount of its paid-up capital. It is admitted that the goods the price of which is sued for, were received from complainants by the Connell-Hall-McLester Company."

H. E. JONES for Complainants.

E. H. EAST, J. C. McREYNOLDS, and CHAMPION, HEAD & BROWN for Defendants.

McALISTER, J. The bill in this case is filed by certain creditors against the Connell-Hall-McLester Company, the Nashville Trust Company, its assignee, and against certain directors of said insolvent corporation. The bill is filed in a twofold view, viz.: First, it alleges that certain directors of the Connell-Hall-McLester Company, after said corporation had made an assignment to the Nashville Trust Company for the benefit of its creditors, bought up, at a discount, debts against said insolvent company, and the bill seeks to hold

these directors liable as trustees for the corporation in such purchases, and to subject profits made in this way to the direct payment of complainants' debts.  The more specific allegations of the bill are, viz.: That the Connell-Hall-McLester Company was a corporation under the laws of Tennessee, with a capital stock of $250,000; that said company did a mercantile business in Nashville, bought goods of complainants, and, in 1891, made a general assignment to the Nashville Trust Company; that the assignee has made a printed statement to creditors, showing that the liabilities of the company largely exceeded its assets.  It is then charged that the defendant, Hall, acting for himself and other directors, after the assignment, went East, and made such representations to many creditors of the company as induced them to sell to him their claims at fifty cents on the dollar.  It is charged that Hall made these representations knowing the Nashville Trust Company, as assignee, had on hand enough funds to pay more than fifty cents on the dollar on said claims, and that, a short time after the deal, the trust company did pay on the indebtedness of the Connell-Hall-McLester Company sixty-five cents on the dollar, leaving assets still on hand.

Complainants further charge that, after the assignment of the company to the Nashville Trust Company, defendant Hall and his associates, former directors in said company, were left in charge of the business, and carried on the business as em-

ployes of the assignee, and that, while so acting, effected the compromise or purchase of the debts already mentioned. Complainants charge that Hall and associates paid for the claims so bought by them "either directly with money drawn from the assignee of said company on said debts, or made a temporary arrangement by which the money to pay said debts was advanced to them, on the representation that there was money or assets already in the hands of the assignee of said company, or soon would be, to pay fifty cents on the dollar; and said money, if borrowed at all by said Hall and his associates in said deal, was borrowed on the faith of assets of the said Connell-Hall-McLester Company in the hands of the assignee for the benefit of creditors, and was repaid by funds drawn from said assignee. In any event," continues the bill, "said assets were the basis of the transaction, and the creditors who have not been settled with are entitled to any profit made."

This bill, it will be perceived, is not filed in the name of the assignee, nor for the benefit of all creditors, but is the suit of individual creditors. Complainants pray for a decree for their debts against the company and the defendant directors; that the Nashville Trust Company be held responsible to complainants for any sums paid Hall and associates on such claims in excess of the amount actually paid therefor, and that any funds in the hands of the Nashville Trust Company due to Hall and associates on claims purchased by

them be paid to complainants in satisfaction of their debts against the company.

To the bill, as amended, the Nashville Trust Company and the directors demurred. The Chancellor sustained the demurrer, and, in respect to this branch of the case, dismissed the bill. This action is assigned as error.

Without undertaking to pass upon all the grounds of demurrer, we are clearly of opinion the action of the Chancellor was correct, and should be sustained upon the second and fourth assignments, which are as follows, to wit:

"*Second.*—Complainants seek to have profits alleged to have been made, or which will be made, by defendant directors, by purchasing claims against the Connell-Hall-McLester Company at a discount, applied to the payment of their debts, and not to have the same declared a part of the corporate assets. The law will not permit them to adopt this course, nor can they have such a remedy."

The fourth ground of demurrer is that "complainants have no right to prosecute this suit, because they do not show that the Connell-Hall-McLester Company or its assignee has been requested to proceed against these directors to recover any profits made by them for the benefit of the corporation or its creditors."

It was held by this Court, in the case of *Wallace* v. *Lincoln Savings Bank*, 5 Pickle, that "no single creditor can appropriate to the payment of his own debt assets properly belonging to an in-

solvent corporation, and no suit can be maintained by a creditor to recover equitable assets for the company unless the company or its assignee has been requested to institute suit, and has wrongfully refused." No such allegation is made, and its omission is fatal to the right of complainants to maintain this bill.

It is sought, in the other aspect of this bill, to hold defendant directors liable, for the reason that the Connell-Hall-McLester Company was a manufacturing corporation, and these defendants contracted the debts due the complainants, knowing them to be in excess of the capital stock. It is charged in the bill that defendant is a corporation, chartered under the laws of the State as a *manufacturing* corporation, with a capital stock of $250,000, and carried on a manufacturing and mercantile business. Complainants charge that their respective debts were incurred by the Connell-Hall-McLester Company in excess of its capital stock, and that the defendant directors incurred said debts with the knowledge that, at the time, the said company was indebted to the full extent of its capital stock. The charter of the company provided that "if the indebtedness of such company shall at any time exceed the capital stock paid in, the directors assenting thereto shall be individually liable to the creditors for such excess."

After some other pleadings, which it is not necessary to mention, answers were filed by all the individual director defendants, in which they deny

25—9 P

all the allegations of the bill under oath, the oath not having been waived in the bill. The defendants especially denied that they ever assented to the creation of complainants' debts, knowing them to be in excess of the capital · stock of the company, and emphatically denying that the Connell-Hall-McLester Company was a manufacturing corporation, or ever so regarded.

The case went to proof. The Chancellor, upon final hearing, decreed that the equities of the bill are denied in the answer, and are not sustained by the proof. It is stated by counsel for appellant that the ruling of the Court was based upon the finding that the proof failed to show that any of the directors sued as defendants assented to the purchase of the goods after it was known that the liabilities exceeded the capital stock paid in.

We are of opinion, upon an examination of the record, that the proof is insufficient to warrant the contention of complainants that these directors assented to the creation of these debts, and that the decree of the Chancellor is correct. In addition to this, it is a conclusive answer to such relief that the bill was not properly framed. As has already been observed, this is a proceeding by individual creditors in their own behalf, without the intervention of the corporation, the assignee, or the other creditors. This clause in our general incorporating act is almost identical with that of Congress regulating the creation of corporations in the District of Columbia. That Act has been

construed by the Supreme Court of the United States, the Court using this language:

"Nor can we believe that an act intended for the benefit of the creditors generally, where the bank proves insolvent, can be justly construed in such a manner that any one creditor can appropriate the whole or any part of this liability of the trustees to his own benefit, to the possible exclusion of all or of any part of the other creditors. But such may, and probably would, often be the result if any one creditor could sue alone while there were others unsecured. We are of opinion," continues the Court, "the fair and reasonable construction of the Act is that the trustees who assent to an increase of the indebtedness of the corporation beyond its capital stock are to be held guilty of a violation of their trust; that Congress intended that, so far as this excess of indebtedness over capital stock was necessary, they should make good the debts of creditors who had been the sufferers by their breach of trust; that the liability constitutes a fund for the benefit of all creditors who are entitled to share in it, in proportion to the amount of their debts. The remedy for this violation of duty as trustees is, in its nature, appropriate to a Court of Chancery. The powers and instrumentalities of that Court enable it to ascertain the excess of the indebtedness over the capital stock, the amount of this indebtedness which each trustee may have assented to, and the extent to which the funds of the cor-

poration may be resorted to for the payment of debts; also the number and names of the creditors, the amount of their several debts, to determine the sum to be received of the trustee and apportioned among the creditors, etc. This course avoids the injustice of many suits against the defendants for the same liability, and the greater injustice of permitting one creditor to absorb all or a very unequal portion of the sum for which the trustees are liable, and it adjusts the rights of all concerned on the equitable principles which lie at the foundation of the statute. One creditor cannot sue alone, but must either join the other creditors or bring his suit in behalf of himself and all other creditors; and, while the case is considered in reference to remedies afforded by the statute, it is placed on the solid ground that the fund, by the statute, consists of the excess of all debts over the capital, and that there are various parties having several and unequal claims against the fund exceed it in amount." *Horner* v. *Henning*, 93 U. S., 231. See also *Pollard* v. *Bailey*, 20 Wall., 520; *Stone* v. *Chisolm*, 113 U. S., 302.

So that, all other questions out of the way, it is plain the present bill cannot be maintained, because it appears that the whole frame-work of the bill is designed to subject to the payment of complainants' individual debt a fund which is created by the statute for the benefit of all the creditors whose debts were created, with the assent of the directors, in excess of the capital stock paid in.

The liability of the directors under the charter is solely for the excess of indebtedness, and to the creditors of the company whose debts were created in violation of law, one or two or three of whom cannot maintain an action for their individual debts.

There is no error in the decree of the Chancellor, and it is affirmed.