[S. F. No. 6412. In Bank.—January 29, 1916.]

H. A. MOSS and J. F. BRADFORD, Appellants, v. J. HOWARD SMITH, Intervener and Respondent; C. C. MOORE et al., Defendants and Respondents.

CORPORATIONS—PUBLIC UTILITIES—INCURRING INDEBTEDNESS IN EXCESS OF CAPITAL STOCK—LIABILITY OF DIRECTORS UNDER SECTION 309 OF CIVIL CODE—REPEAL BY PUBLIC UTILITIES ACT.—Section 309 of the Civil Code, in so far as it imposed on participating directors of a corporation a liability for debts of the corporation created in excess of its subscribed capital stock, was repealed as to public utility corporations by sections 52b and 52e of the Public Utilities Act which went into effect on March 23, 1912 (Stats. Ex. Sess. 1911, p. 18).

ID.—PENDING ACTION TO ENFORCE DIRECTORS' LIABILITY—ABATEMENT OF ACTION BY REPEAL OF SECTION 309 OF CIVIL CODE.—As the Public Utilities Act contains no clause saving pending litigation or imperfect or inchoate rights, the effect of the repeal was to destroy the right of a creditor further to prosecute a pending action to

enforce the liability of the directors, under section 309 of the Civil Code, for such excess indebtedness. This result follows whether the action be in its nature penal or remedial.

Id.—Statutory Right of Action—Effect of Repeal on Pending Litigation.—The right of action against directors for incurring corporate indebtedness in excess of the subscribed capital stock, conferred by section 309 of the Civil Code, is purely statutory, and it is a rule of almost universal application that, where a right is created solely by a statute, and is dependent upon the statute alone, and is still inchoate and not reduced to possession, or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Bert Schlesinger, A. E. Shaw, and Edwin H. Williams, for Appellants.

Garrett W. McEnerney, Alfred Sutro, Corbet & Selby, Pillsbury, Madison & Sutro, and Morrison, Dunne & Brobeck, for Respondents.

J. Howard Smith, *in pro. per.*

HENSHAW, J.—The plaintiff, H. A. Moss, brought this action against the defendants, directors of the Ocean Shore Railway Company, based upon the provisions of section 309 of the Civil Code. He averred that the Ocean Shore Railway Company had a capital stock of five million dollars, all of which had been subscribed for and issued and all of which was held and owned by divers persons; that the Ocean Shore Railway Company had issued and sold five million dollars of its bonds, equal to the total amount of its capital stock and of its subscribed capital stock, and owed five million dollars indebtedness on account of this bond issue; that plaintiff is the owner of eight of these bonds, of the par value of one thousand dollars each; that while the Ocean Shore Railway Company thus had outstanding debts represented by its notes and bonds in the sum of five million dollars, the defendants became directors of the company, and as such directors created debts of the corporation in the amount of upward of

two million dollars more; that all of this seven million dollars
indebtedness is due and unpaid; that the corporation became
and is insolvent; that this action is brought by plaintiff as a
creditor of the corporation on his own behalf and on behalf
of all the creditors of the Ocean Shore Railway Company.
The prayer is for a joint and several judgment against these
defendants to the amount of eight thousand dollars, the in-
debtedness due plaintiff, with interest; further, that defend-
ants be ordered to pay two million dollars into court for the
purpose of satisfying the claims of the other creditors. J. F.
Bradford and J. Howard Smith, by leave of court, filed their
complaints in intervention, which complaints in intervention
are in all particulars essential to this consideration identical
with the complaint of the plaintiff Moss. General and special
demurrers were interposed to all of these complaints and
these demurrers were sustained. Plaintiff and intervener de-
clining to amend, take their appeal from the judgment which
followed the sustaining of the demurrers.

Several legal propositions of consequence are argued by
the litigants. It is proper to refer to them but, for reasons
which will hereinafter appear, it is unnecessary to decide all
of them. The first of these legal disputes arises over the con-
struction of the statute (Civ. Code, sec. 309), which makes
the participating directors "jointly and severally liable to the
corporation, and to the creditors thereof, to the full amount
of . . . the debt contracted." By appellants it is contended
that the language of the law itself and the decisions of the
courts upon similar laws establish this right of action in any
creditor of the corporation. Not only, it is urged, does the
law make no distinction between the creditors, but in giving
the right of action to "the creditors," by force of its own
language gives it to all of them, and this construction gains
further assurance from the fact that the same right of action
is given to the corporation, that the recovery therefore is in
the nature of a recovery of a trust fund into the treasury of
the corporation for the benefit not of a selected class of cred-
itors but for the benefit of all the creditors. In support of
this view are cited, with others, the cases of *Low* v. *Buchanan,*
94 Ill. 76; *Woolverton* v. *Taylor,* 132 Ill. 197, [22 Am. St. Rep.
521, 23 N. E. 1007]; *National Bank* v. *Dillingham,* 147 N. Y.
603, [49 Am. St. Rep. 692, 42 N. E. 338]; *Thacher* v. *King,*
156 Mass. 490, [31 N. E. 648]; *Green* v. *Whitehead,* 5 Pa.

Dist. R. 613; *Hornor* v. *Henning*, 93 U. S. 228, [23' L. Ed. 879]; and finally our own cases of *Winchester* v. *Mabury*, 122 Cal. 525, [55 Pac. 393], and *Winchester* v. *Howard*, 136 Cal. 441, [89 Am. St. Rep. 153, 64 Pac. 692, 69 Pac. 77]. Our own cases dealt with the provision of law found in section 3, article XII, of our constitution, making directors of corporations jointly and severally liable to the creditors and stockholders for all moneys embezzled or misappropriated. These decisions declared that the remedy in such an action for the enforcement of this constitutional provision is by a bill in equity in which all the creditors of the corporation are entitled to be represented, precisely as in the judgment recovered all are entitled to share, and appellants argue upon principle that the same construction should be given to the section of the code upon which this action is based. By respondents it is contended that the very plain meaning of the section is that the directors shall be liable only to the persons in whose favor such debts were contracted, and reference is made to the first edition of Thompson's Commentaries on Corporations, and that learned author's discussion in Cyc., where, for example, he says:

"Sec. 4265. Most of the statutes simply make the directors contracting such excessive debts liable therefor to the creditors of the company, meaning of course, to the persons in whose favor such debts were contracted. In some cases it is not distinctly so expressed; but in such cases the implication, of course, is that they are liable to those creditors, because when it is said that a man is liable for a debt, the meaning is that he is liable to the person to whom the debt is due." (Thompson's Com. on Corp.)

"Most of the statutes in terms make the directors liable to creditors, meaning, it must be assumed, to a creditor in favor of whom such excessive indebtedness was contracted." (10 Cyc. 879.)

Further, it is argued that *Hornor* v. *Henning* and other cases limit with scrupulous care the language of their opinions, and declare only "that this liability constitutes a fund for the benefit of all the creditors who are entitled to share in it," and that those only are entitled to share who have actually suffered or who may be thought actually to have suffered by reason of the incurring of the excess indebtedness, that is to say, the creditors of such excessive indebtedness.

This view, it is said, was the interpretation put upon *Hornor* v. *Henning* by Mr. Justice Lurton, but recently of the United States supreme court, in *Allison* v. *Coal Creek etc. Co.*, 87 Tenn. 60, [9 S. W. 226], and this construction has been adhered to in *Moulton* v. *Connell etc. Co.*, 93 Tenn. 377, [27 S. W. 672], and *Tradesman Publishing Co.* v. *Knoxville etc. Co.*, 95 Tenn. 634, [49 Am. St. Rep. 943, 31 L. R. A. 593, 32 S. W. 1097]. This is the first of the legal propositions, interesting in itself, whose decision is unnecessary to this adjudication. For the purposes of this discussion and decision only, the question will be resolved in favor of appellants' contention.

The next is the contention of respondents that section 456 of the Civil Code contains a specific grant of power, with the result that the limitation upon incurring indebtedness declared in section 309 does not apply to that kind of a railroad indebtedness authorized by section 456, so that a corporation which has incurred the bonded indebtedness authorized by section 456 for the purposes of construction, etc., may still incur the indebtedness contemplated by section 309 up to the amount of the "subscribed capital stock." In opposition to this appellants insist that section 456 does not contain a grant of power to incur indebtedness independent of, and in excess of, that limited by section 309, but that the two sections are to be considered together and harmonized. So doing it is plain, so appellants argue, that the primary purpose and object of section 456 was to confer power upon public corporations which, without statutory authority, they lacked, namely, the power to mortgage their property and franchises, a power which, because of the public duties imposed upon those corporations, they did not possess at common law and do not now possess without statutory authority. (3 Thompson, Corp., 2d ed., sec. 2534; Elliott, Railroads, sec. 67; 3 Cook on Corp., 7th ed., sec. 780.) In *Market St. Ry. Co.* v. *Hellman*, 109 Cal. 571, [42 Pac. 225], and *Boyd* v. *Heron*, 125 Cal. 453, [58 Pac. 64], the construction of these two sections, it is said, is distinctly laid down in harmony with appellants' contention. Here again we have but indicated the controversy, and pass it over without decision, saving that for the purposes of this case only further discussion will be had under the view most favorable to appellants, namely, that the law limits the total indebtedness of a corporation to the amount of its capital stock.

The next controverted proposition between these parties litigant is over the nature and character of section 309. Is it in its nature penal, or is it in its nature remedial? This question demands somewhat more detailed consideration than we have felt it necessary to give to the foregoing propositions, and yet again it should be said that, for reasons which will plainly appear, even the determination of this question is not vital to the decision of this case. Respondents' argument upon the nature of this statute may be summarized as follows: Of two permissible constructions of a statute, that which avoids a penalty will be preferred to the other which exacts it. (*Ukiah Guaranty Co.* v. *Curry*, 148 Cal. 256, [82 Pac. 1048].) This statute is susceptible of construction as a remedial statute, but if so, under a remedial statute all that is permitted is compensation to make good a loss; that this in truth is the construction put upon the exact language of section 309, which was adopted in precise words as the law of South Dakota. The supreme court of Vermont, having occasion to discuss and construe the South Dakota statute, thus declares: "That statute clearly is not penal, either in its letter or intent; but it grants a right of action to private persons who have suffered pecuniary injury in consequence of certain officers of corporations violating the statute, to recover damages of those officers, the extent of whose liability is the amount of the pecuniary loss sustained by such private persons, creditors of the corporation." (*Farr* v. *Briggs' Estate*, 72 Vt. 225, [82 Am. St. Rep. 930, 47 Atl. 793].) If this construction is the sound one and is to prevail, then the demurrers were properly sustained, and appellants' appeals are lost, for it is certain that their complaints do not charge, nor attempt to charge, upon any specific loss or damage sustained by plaintiff and intervener by reason of the corporate indebtedness in excess of the capital stock which these directors created. Needless to say appellants therefore combat this construction of the statute, and while insisting that it is remedial in character, also insist that proof of loss growing out of the contracts, or of damage to the creditors arising therefrom, is not at all essential to the maintenance of the action; that the action is in equity, and therefore could not be for the enforcement of a penalty or forfeiture, which equity abhors; consequently there can be no penalty or forfeiture within the meaning of the law; that the law is remedial, and

is to be interpreted as creating a fund for the benefit of the corporation and its creditors, growing out of the dereliction of duty of the directors who are thus made, as it were, sureties for these debts; that the penalty is prescribed by section 566 of the Penal Code. Once more, though for the purposes of this decision only, adopting the view of appellants, that this action will lie without a pleading of special loss and damage to plaintiff growing out of the violation of section 309, nevertheless it must be added that the moment the element of compensation for loss is eliminated, the statute itself becomes highly penal in its nature, and the argument of appellants that it may still be considered purely as a remedial statute is without force. The fact that the action may be treated as in the nature of a creditors' bill brought on behalf of plaintiff creditor and all others, and that it thus addresses itself to the equitable side of the court, has not the slightest weight in determining the nature of the statute, and no more weight has the invocation of the familiar maxim that equity abhors penalties and forfeitures. The question might have been of consequence in the older administration of jurisprudence where the courts of law and equity were wholly separated, but it ceases to be of consequence under our system, and even under the English system since its Reformed Judicature Act has come into effect. All redress and relief is administered in one forum and by one judicial officer. If as chancellor he revolts at enforcing a legal penalty, he will doff his chancellor's robes and lay aside his great seal, and donning the judicial ermine will enforce the penalty (with or without his jury as the case may be), resuming the regalia of his chancellorship for the purpose of making equitable disposition of the fund. So that if in truth this statute does exact a penalty, no embarrassment will be found in the court's enforcing it. And that this statute becomes highly penal in character the moment there is eliminated from it the consideration of compensation for loss, is at once apparent. What is meant by a statutory penalty was defined in *Los Angeles County* v. *Ballerino*, 99 Cal. 593, [32 Pac. 581, 34 Pac. 329], to be "one which an individual is allowed to recover against a wrongdoer as a satisfaction for wrong or injury suffered and without reference to the actual damage sustained." Section 14 of the general corporation law of 1850 [Stats. 1850, p. 348], is, for the purpose of this consideration, substantially the same as

section 309 of the present Civil Code. It declared: "The total amount of the debts which any incorporated company shall owe shall not at any time exceed the amount of the capital stock actually paid in; and in case of any excess, the directors, under whose administration the same may have happened, except those who have caused their dissent therefrom to be entered at large on the minutes of the said directors at the time, and except those who were not present when the same did happen, shall, in their individual and private capacities, jointly and severally be liable for such excess to the said corporation, and in the event of its dissolution, to any of the creditors thereof to the full amount of such excess." In *Irvine* v. *McKeon*, 23 Cal. 472, this court said: "This statute provides for making one person individually liable for the debts of another. . . . Like other statutes which create forfeiture or impose a penalty, it is to be strictly construed." The fact that a statute may have a remedial phase is not at all inconsistent with its being of highly punitive character. The decisions holding that under statutes similar to ours the recovery is not strictly a penalty have to do with the technical definitions of penalty, and with the statutes of limitations governing actions to enforce penalties. (*Willcox* v. *Edwards,* 162 Cal. 455, 464, [Ann. Cas. 1913C, 1392, 123 Pac. 276].) *Huntington* v. *Attrill,* 146 U. S. 657, [36 L. Ed. 1123, 13 Sup. Ct. Rep. 224], upon which appellants rely as supporting their contention that section 309 is a remedial and not a penal statute, is explained by Judge Gilbert in *Patterson* v. *Thompson,* 86 Fed. 85, who shows that the question before the supreme court was solely whether such statutes are penal laws in the sense in which the word is used in international law. The same statute under consideration in *Huntington* v. *Attrill* was again before the supreme court of the United States in *National Park Bank* v. *Remsen,* 158 U. S. 337, [39 L. Ed. 1008, 15 Sup. Ct. Rep. 891], and it was distinctly declared to be in its nature a penal statute, as had previously been held in *Chase* v. *Curtis,* 113 U. S. 452, [28 L. Ed. 1038, 5 Sup. Ct. Rep. 554]. But that this statute is of a highly penal character the moment it is construed as making the directors liable for the full amount of the excess debts which they may have authorized, regardless of loss or damage which may have been occasioned by their acts, does not, we think, call for lengthy discussion. The directors of an oil company which has ex-

hausted its capacity to incur debts enter into a contract on behalf of the corporation for the digging of an oil well for fifty thousand dollars. Upon success or nonsuccess depends the future of the corporation. If the well "comes in," the corporation immediately becomes solvent and prosperous. If it is a "dry hole," the corporation is bankrupt. The venture saves the life of the corporation. Oil is discovered and prosperity follows. Yet, under the terms of this act, as construed by appellants, the corporation itself may recover from these directors the contract price of fifty thousand dollars, and even the well-borer need not look to the corporation for the payment of the debt, but may enforce the directors' liability, and this in a case in which not only no loss has been incurred, but where the excessive contract has proved of incalculable value to the corporation itself. Examples need not be multiplied. We have pointed out that *Irvine* v. *McKeon,* 23 Cal. 472, judicially declares the penal nature of this statute. *Moore* v. *Lent,* 81 Cal. 502, [22 Pac. 875], dealing with the same statute, quotes *Irvine* v. *McKeon* approvingly, and declares: "While such laws are to be commended, as in the interest of creditors and fair dealing, they are penal in their nature and should be strictly construed." Many other courts have adopted the same view of their own similar enactments. (*Patterson* v. *Thompson,* 86 Fed. 85; *Huntington* v. *Attrill,* 146 U. S. 657, [36 L. Ed. 1123, 13 Sup. Ct. Rep. 224]; *National Park Bank* v. *Remsen,* 158 U. S. 337, [39 L. Ed. 1008, 15 Sup. Ct. Rep. 891]; *Chase* v. *Curtis,* 113 U. S. 452, [28 L. Ed. 1038, 5 Sup. Ct. Rep. 554]; *Brown* v. *Clow,* 158 Ind. 403, [62 N. E. 1006]; *Savage* v. *Shaw,* 195 Mass. 574, [122 Am. St. Rep. 272, 12 Ann. Cas. 806, 81 N. E. 303]. See same case, 12 Ann. Cas. 806, where it is noted that the majority of jurisdictions hold such statutes to be penal.) While the soundness of this court's decision in *Irvine* v. *McKeon* has been declared in *Steam Engine Co.* v. *Hubbard,* 101 U. S. 188, [25 L. Ed. 786]; *Snell* v. *Bradbury,* 139 Cal. 379, [73 Pac. 150]; *Savings & Loan Soc.* v. *McKoon,* 120 Cal. 177, [52 Pac. 305]; *Moore* v. *Lent,* 81 Cal. 502, [22 Pac. 875]; *Mitchell* v. *Hotchkiss,* 48 Conn. 9, [40 Am. Rep. 146]; *State Sav. Bank* v. *Johnson,* 18 Mont. 440, [56 Am. St. Rep. 591, 33 L. R. A. 552, 45 Pac. 662]; and *Savage* v. *Shaw,* 195 Mass. 571, [122 Am. St. Rep. 272, 12 Ann. Cas. 806, 81 N. E. 303]. Nothing in *Winchester* v. *Howard,* 136 Cal. 441, [89 Am. St. Rep. 153, 64 Pac. 692, 69 Pac. 77],

is in conflict with this; in the first place, because the directors, under section 3, article XII, of the constitution, which section was the foundation of the action, are liable solely for loss sustained by embezzlement and misappropriation—a liability involving loss and thus entirely different in character from that which appellants contend is imposed by section 309. Moreover, the court is at pains to point out that the constitutional enactment did not enlarge the liability imposed upon these trustees under the rules of common law, saying that no one contends that their liability "extends to damages resulting from mere negligence not resulting in some misappropriation nor a loss through bad management or incompetency or mistake," and saying further: "No officer, omitting for the nonce the suretyship, is made liable for any act or to any greater extent than he was liable before the constitutional amendment." And for a final word upon the equitable phase of the matter, no court has found difficulty in reconciling the jurisdiction of equity over similar statutes, which the courts unhesitatingly hold to be penal in character. (*Merchants' Bank etc.* v. *Stevenson*, 10 Gray (Mass.), 232; s. c., 7 Allen (Mass.), 489; *Tradesman Publishing Co.* v. *Knoxville Car Co.*, 95 Tenn. 634, [49 Am. St. Rep. 943, 31 L. R. A. 593, 32 S. W. 1104]; *National Bank* v. *Dillingham*, 147 N. Y. 603, [49 Am. St. Rep. 692, 42 N. E. 338].) In all of these jurisdictions it is held that a creditors' bill is the proper method to establish rights under like statutes, and in all of them the statutes themselves are declared to be penal in their nature. Indeed, the whole matter may be summed up in the statement that even if section 309 be remedial so far as the creditor is concerned, it is highly punitive so far as the directors are concerned.

While we thus conclude that in this action we are dealing with section 309 in its penal aspect, that determination is, as we have before intimated, not vital to the final proposition pressed by respondents upon our attention, which proposition is that section 309, in so far as it affects this action and the right to maintain and prosecute it, has been repealed, and that with the repeal this action itself must fall. The Public Utilities Act went into force on March 23, 1912. (Stats. and Amendments to the Codes, Extra Sess. 1911, p. 18.) By the terms of that act (section 52b), "The commission may authorize issues of bonds, notes or other evidences of indebtedness, less than, equivalent to or greater than the authorized or sub-

scribed capital stock of a public utility corporation, and the provisions of sections 309 and 456 of the Civil Code of this state, in so far as they contain inhibitions against the creation by corporations of indebtedness, evidenced by bonds, notes or otherwise, in excess of their total authorized or subscribed capital stock shall have no application to public utility corporations." In the event that the corporation issues any stock or stock certificate or bond, note, or other evidence of indebtedness in nonconformity with the order of the commission, or contrary to the provisions of the act, it is subject to a penalty of not less than five hundred dollars nor more than twenty thousand dollars for each offense (section 52e), and every officer, agent, or employee knowingly authorizing, directing, or aiding in any such issue "shall be guilty of a felony." Manifestly, these provisions work radical changes in the pre-existing law declared in section 309. Now no longer do the assenting directors suffer any monetary penalty. It is the corporation which is to suffer; but, upon the other hand, no longer are the aiding and assenting directors guilty of a misdemeanor. They are guilty of a felony. The judgment in this action was entered on the 15th of April, 1912. This later law was in force upon that date and had been in force since the 23d of March, 1912. That this change in the law destroyed absolutely appellants' right further to prosecute their action, whether that action be in its nature penal or remedial, no possible doubt can be entertained. True it is that the new law does not repeal sections 309 and 456 of the Civil Code *in toto,* but it does repeal them absolutely so far as they apply to that class of public utility corporations to which the Ocean Shore Railway Company belongs, and it contains no clause saving pending litigation or imperfect and inchoate rights. The right of action against these directors conferred by section 309 was a statutory right pure and simple, having no foundation in contract, nor any existence at common law. (*National Bank* v. *Dillingham,* 147 N. Y. 603, [49 Am. St. Rep. 692, 42 N. E. 338].) There can be no question in this state of the power of the legislature to destroy such inchoate and unvested rights, for section 327 of the Political Code expressly declares that "any statute may be repealed at any time, except when it is otherwise provided therein. Persons acting under any statute are deemed to have acted in contemplation of this power of repeal." Says Thompson (2 Thompson,

Corp., 2d ed., sec. 1331) : ''Courts are not required to adopt the theory that these statutes are penal, to justify the holdings that the repeal of such a statute without reservation destroys any unenforced rights of a creditor. Such holdings can be justified on the equally sound doctrine that the repeal of a statute which gives a cause of action destroys the right, and any pending action based on such statute is abated by such repeal.'' Therefore it is that we say that it does not become of vital consequence in this consideration whether the statute be viewed as penal or remedial. The principle is that declared in *Curran* v. *Owens*, 15 W. Va. 208, in the following language: ''A right of action which does not exist at common law but depends solely upon statute falls with a repeal of the statute, without a saving clause, unless that right has been carried into judgment.'' Such is the decision of this court in *Napa State Hospital* v. *Flaherty*, 134 Cal. 315, [66 Pac. 322], where an earlier law had made the father liable for the support of his insane adult son while confined in a state asylum. A later statute covering the whole field did not in terms repeal the earlier one, but was merely silent on the question of the father's liability. After the later statute had gone into operation the Napa State Hospital brought its action against Flaherty to compel him to support his insane adult son. Here was clearly the case of a remedial statute. This court in holding the father not liable declared as follows: ''If we were to concede, as claimed by appellant's counsel in their opening brief, that the entire act of 1889 was repealed by the act of 1897—and this court has very strongly so intimated in *People* v. *King*, 127 Cal. 570, 574, [60 Pac. 35]—then the right to recover of defendant is lost. It is a rule of almost universal application that, where a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession, or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause. (Sutherland on Statutory Construction, secs. 162, 163; Endlich on the Interpretation of Statutes, sec. 478, and cases in notes.) It was said by Tindal, C. J., in *Kay* v. *Goodwin*, 6 Bing. 576, 4 Moore & P. 341, [130 Eng. Reprint, 1403], that the effect of repealing a statute is 'to obliterate it as completely from the records of the parliament as if it had never existed, except for the purpose of those actions which were

commenced, prosecuted, and concluded whilst it was an existing law.' '' To like effect in *People* v. *Bank of San Luis Obispo,* 159 Cal. 65, [Ann. Cas. 1912B, 1148, 37 L. R. A. (N. S.) 934, 112 Pac. 866], it is said: ''These cases have been cited as fairly typifying the extremes of judicial determination, and as expressing the reasons upon which their rules of decision are based. In the case of penalties and crimes the repeal operates to defeat all actions pending. In case of a statute conferring civil rights or powers, the repeal operates to deprive the citizen of all such rights or powers which are at the time of the repeal inchoate, incomplete, and unperfected. In the case of statutes conferring jurisdiction, the repeal operates by causing all pending proceedings to cease and terminate at the time and in the condition which existed when the repeal became operative. In cases of judgments pending upon appeal, the rule of decision is that the proceedings abate and the judgment falls.'' In *Flanigan* v. *Sierra County,* 196 U. S. 553, [49 L. Ed. 597, 25 Sup. Ct. Rep. 314], discussing a California law, the supreme court of the United States says: ''The general rule is that powers derived wholly from a statute are extinguished by its repeal, and it follows that no proceedings can be pursued under the repealed statute though begun before the repeal, unless said proceedings be authorized under a special clause in the repealing act.'' And to the same effect are all of the cases in this state. (*McMinn* v. *Bliss,* 31 Cal. 122; *Lamb* v. *Schottler,* 54 Cal. 319; *Spears* v. *County of Modoc,* 101 Cal. 303, [35 Pac. 869] ; *Anderson* v. *Byrnes,* 122 Cal. 272, [54 Pac. 821] ; *City of Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 634] ; *Wheeler* v. *County of Plumas,* 149 Cal. 782, [87 Pac. 802].) Says Mr. Justice Gray in *New London Northern R. R. Co.* v. *Boston etc. R. R. Co.,* 102 Mass. 386: ''The conclusive answer to this argument is, that a statute which wholly repeals an earlier one, either expressly or by implication, without any saving clause, makes it ineffectual to support any proceedings, whether not yet begun, or pending at the time of its passage, and not already prosecuted to final judgment vesting absolute rights. The books are so full of cases illustrating this principle that the only difficulty is in making a selection.'' Without further multiplying quotations it may be said that the principle is of universal application, as is plainly established by *Vance* v. *Rankin,* 194 Ill. 625, [88 Am. St. Rep. 173, 62 N. E. 807] ; *Van Inwagen* v. *City of*

*Chicago*, 61 Ill. 31; *Taylor* v. *Strayer*, 167 Ind. 23, [119 Am. St. Rep. 469, 78 N. E. 236]; *Louisiana* v. *Mayor of New Orleans*, 109 U. S. 285, [27 L. Ed. 936, 3 Sup. Ct. Rep. 211]; *Cope* v. *Hampton County*, 42 S. C. 17, [19 S. E. 1018]; *Bennett* v. *Hargus*, 1 Neb. 419; *Butler* v. *Palmer*, 1 Hill (N. Y.), 324; *Wilson* v. *Head*, 184 Mass. 515, [69 N. E. 317]; *Yeomans* v. *Heath*, 185 Mass. 189, [70 N. E. 1114]; *Surtees* v. *Ellison*, 9 Barn. & C. 750, [109 Eng. Reprint, 278]; *Kay, Assignee*, v. *Goodwin*, 6 Bing. 576, [130 Eng. Reprint, 1403]; *Rex* v. *Justice of the Peace for the City of London*, 3 Burr. 1455, [97 Eng. Reprint, 924].

It follows herefrom that the demurrers were properly sustained and the judgments appealed from are therefore affirmed.

Shaw, J., Melvin, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.